

# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ACTON CORPORATION and NATIONAL DEVELOPMENT COMPANY, INC., Appellants

No. 05-91-01720-CV     V.

ROBERT J. SABINSKE, ANITA SABINSKE, BARBARA SMITH, SUSAN MULLINS, and NANCY SABINSKE, Appellees

Appeal from the 193rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 90-00145-L).

Opinion delivered by Justice Barber, Justices Kinkeade and Whittington also participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for new trial. We **REVERSE** the trial court's ruling striking National Development Corporation's intervention. We **ORDER** the trial court reinstate National Development Corporation's intervention and to place National Development Corporation on its docket in cause number 90-00145-L as a party. It is **ORDERED** that appellants Acton Corporation and National Development Company, Inc. recover their costs of this appeal from appellees Robert J. Sabinske, Anita Sabinske, Barbara Smith, Susan Mullins, and Nancy Sabinske. The respective obligations of Acton Corporation and National Development Corporation as principals and United Pacific Insurance Company surety on appellants' cost bonds are **DISCHARGED**.

Judgment entered August 9, 1995.

WILL BARBER
JUSTICE

**REVERSED AND REMANDED, Opinion filed August 9, 1995**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-91-01720-CV

### ACTON CORPORATION and NATIONAL DEVELOPMENT COMPANY, INC., Appellants

### V.

### ROBERT J. SABINSKE, ANITA SABINSKE, BARBARA SMITH, SUSAN MULLINS, and NANCY SABINSKE, Appellees

On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 90-00145-L

# OPINION

Before Justices Kinkeade, Barber,[1] and Whittington[2]
Opinion By Justice Barber

---

[1] Justice Barber succeeds Justice Jeff Kaplan, a member of the original panel. Justice Barber has reviewed the briefs, the record, and the tapes of oral argument.

[2] Justice Mark Whittington succeeds Justice Annette Stewart, a member of the original panel. Justice Whittington has reviewed the briefs and the record.

Appellee Robert J. Sabinske (Sabinske) together with his four daughters, Anita Sabinske, Barbara Smith, Susan Mullins, and Nancy Sabinske (collectively the Sabinskes) sued appellant Acton Corporation (Acton) alleging damage from breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary duty, and fraud. Appellant National Development Corporation's (NDC) attempt to intervene was denied by the trial court.

Acton appeals from a favorable judgment for the Sabinskes, asserting in twenty-four points of error that: (1) the trial court erred in excluding evidence; (2) a prior Fifth Circuit Court of Appeals (Fifth Circuit) decision in another lawsuit involving the parties was erroneously ignored; (3) Acton was denied a fair trial; (4) exemplary damages were not recoverable; (5) judgment for the Sabinskes based on breach of duty of good faith, breach of fiduciary duty, breach of contract, and fraud was improper; and (6) the trial court erred in directing a verdict against Acton on its tortious interference with contract claim. NDC asserts the trial court erred in striking its intervention. The Sabinskes, by cross-point, assert they are entitled to an additional award of exemplary damages.

We reverse the trial court's judgment in favor of the Sabinskes. We reverse the trial court's directed verdict on Acton's tortious interference claim. We reverse the trial court's striking of NDC's intervention. We remand this case to the trial court for new trial and order that NDC's intervention be reinstated.

## FACTUAL BACKGROUND

Sabinske began real estate development operations as NDC in about 1954. NDC began basically as a residential and later as a resort "blue collar" developer. Through simplicity of operations and holding down costs, NDC sought a market that other developers were not reaching. Its developments did not include high-cost amenities such as tennis courts, golf facilities, club houses, and swimming pools. It located its developments in such places as Kansas City, Omaha, St. Louis, Nashville, and Des Moines.

In 1983, the Sabinskes, by virtue of a Stock Purchase Agreement (SPA), sold NDC to Treco, Inc. (Treco).[3] The SPA called for a $8,600,000 down payment and continued payments pursuant to a very complex payment scheme based on the future profitability and expenses of NDC's developments. Future disbursements to the Sabinskes were dependent, in part, on Acton's cost management and allocation of expenses. As will be shown below, the payment scheme was so complex that two federal court's disagreed on its interpretation.

Treco borrowed $5,000,000 from Republic Bank and was allowed to transfer $3,600,000 out of NDC to pay the down payment. To some extent, repayment of the RepublicBank note was dependent on the profitability of NDC's operations and cost allocations. Also, the amount disbursed to the Sabinskes was, to some extent, dependent on the balance due and owing to RepublicBank because the lower the balance on the loan,

---

[3] Through mergers, Sunstates Corporation (Sunstates) succeeded Treco as a party to the SPA, and Acton succeeded Sunstates.

-3-

the higher the disbursements to the Sabinskes.

Robert J. Sabinske remained president of NDC until October 31, 1987. When payments from NDC began to diminish in 1987, the Sabinskes hired accountants to investigate. Thereafter, the Sabinskes filed suit in federal court seeking a declaratory judgment regarding certain provisions of the SPA. Based on testimony presented at trial, the federal district court rendered judgment favorable to the Sabinskes. However, on May 9, 1990, the Fifth Circuit modified the district court's judgment so that it was somewhat less favorable to the Sabinskes.[4]

Issues were submitted to the jury on (1) breach of the SPA; (2) fraud in the administration of the SPA; (3) breach of duty of good faith and fair dealing; and (4) breach of fiduciary duty under the SPA. The jury found in favor of the Sabinskes on each theory submitted. The jury awarded $3,500,000 in actual damages with respect to each separate theory of recovery. The jury also made separate determinations of $5,000,000 in exemplary damages on the fraud, breach of duty of good faith, and breach of fiduciary duty claims. Pursuant to the jury's verdict, the trial court entered judgment for $3,500,000 in actual damages, $5,000,000 in exemplary damages and $148,000 in attorney's fees.[5] The trial court did not specify on which theory or theories of recovery it based its judgment.

---

[4] The Fifth Circuit opinion, which was unpublished, was not entered into evidence at trial nor was an offer of proof submitting the opinion itself made. Acton did make a summary offer of proof regarding certain limited holdings of the Fifth Circuit.

[5] The parties stipulated to the amount of the Sabinskes' attorney's fees.

# I. EXCLUSION OF TESTIMONY

In its first six points of error, Acton asserts the trial court erred in excluding or limiting the fact and lay opinion testimony of Paul Albritton, Ray Bullion, and Glenn Kennedy. Albritton, Bullion, and Kennedy were officers of Acton and/or NDC. Acton sought testimony from them explaining certain accounting matters, business practices, and generally rebutting the Sabinskes' case. The trial court significantly limited the scope of their testimony because they were not identified as expert witnesses. Acton argues the trial court's limiting of their testimony constitutes reversible error.

## A. Applicable Law

We apply an abuse of discretion standard to a trial court's exclusion of evidence. *Coker v. Burghardt*, 833 S.W.2d 306, 309 (Tex. App.--Dallas 1992, writ denied); *Keetch v. Kroger Co.*, 845 S.W.2d 276, 281 (Tex. App.--Dallas 1990), *aff'd*, 845 S.W.2d 262 (Tex. 1992). In order to gain reversal on the basis of improper exclusion of evidence, the complaining party must show (1) it was error to exclude the evidence and (2) the error probably resulted in an improper verdict. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *City of Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 790 (Tex. App.--Dallas 1992, writ denied). The omitted evidence must be more than merely cumulative. Usually, it must be controlling on a material issue dispositive of the case. *See Alvarado*, 897 S.W.2d at 753-54; *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). In making such a determination, the entire record must be reviewed to

-5-

determine if there is reversible error. *Gee*, 765 S.W.2d at 396. An error in the exclusion of evidence requires reversal if the complaining party shows "that the judgment turns on the particular evidence excluded . . . " *Alvarado*, 897 S.W.2d at 754.

To preserve error when testimony or evidence is excluded, a party must make an offer of proof showing what the testimony or evidence would have been. TEX. R. APP. P. 52; TEX. R. CIV. EVID. 103(a); *Posner v. Dallas County Child Welfare Unit of the Texas Dep't of Human Servs.*, 784 S.W.2d 585, 588 (Tex. App.--Eastland 1990, writ denied); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 274-75 (Tex. App.--Amarillo 1988, writ denied); *Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 178 (Tex. App.--Waco 1987, writ denied).

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue. TEX. R. CIV. EVID. 701.

### B. Application of Law to Facts

### 1. Bullion

Acton failed to make an offer of proof as to what Bullion's testimony would have been had he been allowed to testify; therefore, we do not reach the question of whether the trial court erred in limiting Bullion's testimony. We overrule Acton's second and fifth points of error.

## 2. Albritton

Acton's witness, Albritton, was executive vice president of Acton Corporation. Before the jury, Albritton testified that he was with Acton's predecessor companies until the end "and since the Stock Purchase Agreement, I administered the Stock Purchase Agreement." Albritton was the person at Acton responsible for seeing that the money was distributed to the Sabinske family under the SPA from sometime in 1986 and thereafter. His recollection was that some $16,000,000 had been paid to the Sabinskes during the terms of the SPA. The trial court did not allow Albritton to testify as to what, if anything, the Sabinskes were owed under the SPA and why. In an offer of proof, Albritton testified as to what amounts, if any, he thought were due the Sabinskes and why. Clearly such evidence was controlling, as whether the SPA was breached was the most important issue in the case. This evidence was coming from the perspective of the sole administrator of the SPA; therefore, it was not cumulative of other evidence that was admitted. Furthermore, Albritton's understanding and belief as to what amount, if any, was owed to the Sabinskes was highly relevant to the issues of breach of duty of good faith, fraud, and breach of fiduciary duty. The evidence was also important to the determination of what amount, if any, should be awarded as actual and punitive damages.

Pursuant to Texas Rule of Civil Evidence 701, such evidence was rationally based on the perception of the witness and would have been helpful to a clear understanding of his testimony or determination of a fact in issue. Further, much of the improperly excluded

testimony was fact, rather than opinion, evidence. The trial court abused its discretion in excluding it and Acton was harmed. We sustain Acton's first and fourth points of error.

### 3. Kennedy

Acton complains of the trial court's limitation of Kennedy's testimony in points of error three, six, nine, and ten.

Kennedy was the vice president, treasurer, and chief financial officer of Acton. The record indicates that he had the final say on what amounts were distributed to the Sabinskes. In the offer of proof, Kennedy explained the reason for a $500,000 difference reflected in balance sheets regarding the amount due to the Sabinskes. The Sabinskes stressed this discrepancy as being evidence of bad faith and breach of contract. Kennedy testified that the difference was due to the difference between the ruling of the federal district court and that of the Fifth Circuit. During a voir dire examination during the offer of proof, Kennedy testified that he would have to explain the changes were mandated by generally accepted accounting principles and the Fifth Circuit's opinion.

The trial court excluded Kennedy's testimony because it concluded that it would be expert testimony. We disagree.

The fact that Kennedy's testimony may have been based on generally accepted accounting principles did not subject him to disqualification as an expert witness. The gist of his excluded testimony regarded Acton's reliance on the Fifth Circuit's opinion in preparing its financial reports. Specifically, he sought to explain changes in an entry entitled

"accrued acquisition consideration."[6] Kennedy also sought to explain the differences among the federal district court's, the Fifth Circuit's, the Sabinskes', and Acton's interpretation of the SPA.

Interpretation of the SPA was a critical issue relevant to all the Sabinskes' tort and contract theories of recovery. The federal courts' opinions go directly to the terms of the contract which Acton allegedly breached. Acton's contentions regarding the terms of the contract and the differing interpretations of the SPA are relevant to the determination of the controlling issues of Acton's intent, the potential falsity of Acton's representations, its good faith or lack thereof, and damages. Such evidence could have affected the jury's perception of the reasonableness of Acton's actions and positions. The evidence is not cumulative of other evidence presented and goes directly to material findings of the jury. The impact of the knowledge that two federal courts differed significantly on their interpretations of the SPA, and Acton's claimed reliance on them, could have affected virtually every aspect of the jury's verdict.

The brevity of Kennedy's admitted testimony and the lack of explanation of Acton's defense was emphasized by the Sabinskes' counsel in jury argument: "Now, what evidence did these people offer to refute that [Acton's alleged scheme]. Well, they called Mr. Kennedy, whom I'll call the two-minute witness, the gentleman with the beard seated back

---

[6] Earlier in the trial, appellees argued that this entry was Acton's calculation of what was owed to them. Acton disputed, or would have disputed, this interpretation had it been given the opportunity to explain the financial records.

here. Mr. Kennedy gets on the stand. He says, 'I prepared it.' And it's adios. He doesn't say another word to tell you all what happened. No excuse, no explanation, not even an apology."

We conclude that the trial court erred in excluding Kennedy's proffered testimony and that such error was harmful and warrants reversal. We sustain Acton's third, sixth, ninth, and tenth points of error.

## II. THE FIFTH CIRCUIT OPINION, RES JUDICATA, COLLATERAL ESTOPPEL, AND LAW OF THE CASE

In its eleventh, twelfth, and thirteenth points of error, Acton complains about the trial court's (1) allowing the Sabinskes to introduce evidence and argument contrary to the Fifth Circuit's opinion and (2) entering judgment contrary to the Fifth Circuit opinion. Acton asserts these matters constitute reversible error because the evidence should have been excluded, and the judgment should have been barred by the doctrines of res judicata, collateral estoppel, and law of the case. If these points are meritorious, rendering of judgment, at least in part, might be possible. Therefore, we must consider them. *See* Tex. R. App. P. 90(a).

Res judicata, collateral estoppel, and law of the case are affirmative defenses which, if not specifically pleaded, are waived. *See* Tex. R. Civ. Evid. 94; *Austin Transp. Study Policy Advisory Comm. v. Sierra Club*, 843 S.W.2d 683, 688 (Tex. App.--Austin 1992, writ denied). Acton did not plead res judicata, collateral estoppel, or law of the case.

Therefore, Acton waived any arguments based on these doctrines. Further, neither the Fifth Circuit opinion nor the pleadings underlying it are in the record. In the absence of the Fifth Circuit opinion, we cannot determine whether the Sabinskes were erroneously allowed to introduce evidence contrary to the opinion. *See Walker v. Sharpe*, 807 S.W.2d 442, 447 (Tex. App.--Corpus Christi 1991, no writ) (pleadings and judgment necessary to determine applicability of res judicata).

We overrule Acton's eleventh, twelfth, and thirteenth points of error.

## III. STANDARD OF REVIEW: SUFFICIENCY OF THE EVIDENCE

### A. Legal Sufficiency

In reviewing no evidence points, we consider only the evidence and reasonable inferences drawn therefrom, which, when viewed in their most favorable light, support the court's findings. We disregard all evidence and inferences contrary to the fact finding. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex. 1986). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16.

### B. Directed Verdict

In reviewing the trial court's directed verdict on factual grounds, we determine whether there is any evidence of probative force to raise fact issues on the material questions presented. A directed verdict can be justified only if no other verdict could have been rendered. In this analysis, all fact issues must be resolved in favor of the non-movant

and against the movant. All evidence and inferences contrary to the non-movant's position are disregarded. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex. 1976); *Morey v. Page*, 802 S.W.2d 779, 783 (Tex. App.--Dallas 1990, no writ).

## IV. DUTY OF GOOD FAITH AND FAIR DEALING AND FIDUCIARY DUTY

In its seventeenth point of error, Acton challenges the trial court's award of exemplary damages, arguing the Sabinskes' causes of action sounded in contract and not in tort. In its twentieth and twenty-first points of error, Acton asserts that the trial court erred in entering judgment on the basis of breach of duty of good faith and fair dealing and fiduciary duty, respectively.

### A. Fiduciary Duty and Duty of Good Faith

The jury found in the Sabinskes' favor on each of the questions submitted on breach of duty of good faith and fair dealing and breach of fiduciary.[7] Acton essentially argues there was no evidence of a special relationship between it and the Sabinskes giving rise to these duties.[8]

---

[7] The jury found that the breach of duty of good faith and fair dealing was malicious, oppressive, or accompanied by fraud, and that the breach of fiduciary duty was intentional and malicious.

[8] The jury was instructed as follows regarding these duties:

> With respect to the foregoing question [regarding the existence of a special relationship], you are instructed that a special relationship is one in which it is necessary for one party to place special trust in the other in order to accomplish the goals of the contract.

> With respect to the foregoing issue [regarding breach of a duty of good faith and fair dealing], you are instructed that a duty of good faith and fair dealing is implied in any contract in which there is a special relationship between the parties such that it is necessary for one party to place special trust in the other in order to accomplish the goals of the contract. This duty of good faith and fair dealing requires that neither party to the

-12-

The evidence presented at trial showed that the distribution of proceeds to the Sabinskes depended on Acton's effectively and fairly operating NDC. After Robert J. Sabinske left NDC, the Sabinskes were totally dependent upon Acton for further distributions. The record contains evidence from which the jury could have found that the Sabinskes "reposed special confidence" in Acton and that Acton was "bound to act with good faith and due regard to the interests of" the Sabinskes. More than a scintilla of evidence was also presented showing that Acton breached the duty of good faith and fair dealing. In sum, there was more than a scintilla of evidence to support the jury's findings on good faith and fiduciary duty.

The foregoing findings could have been made outside the terms of the SPA. Thus, the same operative facts which supported the jury's breach of contract finding are not necessarily those underlying the jury's breach of good faith and fiduciary duty findings. Therefore, Acton's challenge to the legal sufficiency of the evidence supporting the jury's breach of fiduciary duty and duty of good faith and fair dealing findings fails.

---

contract do anything to injure the right of the other party to receive the benefits of the agreement.

With respect to the foregoing issue [regarding the existence of a fiduciary duty], you are instructed that a fiduciary duty may arise where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. A fiduciary relationship may exist when the parties have moral, social, domestic or purely personal relationships; or if there is an imbalance of bargaining power conferred upon the parties by the terms of the contract with respect to the performance of the contract.

With respect to the foregoing issue [regarding breach of fiduciary duty], you are instructed that one who owes a fiduciary duty must act fairly, honestly and in good faith.

## B. Contract Versus Tort Claims

Acton also asserts the same wrongful conduct underlies the Sabinske's breach of contract and tort theories of recovery, that is, miscalculation of Acton's "payment to the Sabinskes under the terms of the Stock Purchase Agreement." Acton argues that the Sabinskes are entitled to damages for breach of contract only. *See Central Savs. & Loan Ass'n v. Stemmons Northwest Bank, N.A.*, 848 S.W.2d 232, 238 (Tex. App.--Dallas 1992, no writ); *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 719-20 (Tex. App.--Dallas 1989, writ denied). We disagree.

Some contracts involve special relationships that give rise to duties enforceable as torts. *See Southwestern Bell Tel. Co v. DeLanney*, 809 S.W.2d 493, 494 n.1 (Tex. 1991). "'Tort obligations are in general obligations that are imposed by law--apart from and independent of promises made and therefore apart from the manifested intention of the parties--to avoid injury to others.'" *Id.* (quoting W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 655 (STD. ED. 1984)). Acton's relationship with the Sabinskes could have entailed obligations imposed by law, and not contract, which would support tort liability. *See DeLanney*, 809 S.W.2d at 495 n.2.

More than a scintilla of evidence was presented to the jury indicating that Acton manipulated the activities and accounting practices of NDC in such a way as to trap funds in NDC and reduce NDC's income stream in order to reduce distributions to the Sabinskes. The Sabinskes presented legally sufficient evidence from which a reasonable finder of fact

could have concluded that Acton breached its duty of good faith and fiduciary duties by engaging in such conduct. In sum, the record contains evidence potentially showing tortious conduct outside the alleged breach of contract. Thus, there was legally sufficient evidence supporting the jury's finding that the Sabinskes were entitled to recover under their breach of duty of good faith and fiduciary duty theories. We overrule Acton's seventeenth, twentieth, and twenty-first points of error.

## V. FRAUD

In its twenty-second point of error, Acton asserts the evidence was legally insufficient to support the jury's fraud findings.[9] Acton's argument is based on the contention that the allegedly fraudulent representations, contained in financial statements, were predicated upon the changing federal court interpretations of the SPA. Acton also relies on Robert Sabinske's testimony indicating that he did not rely on some of the information contained in the financial reports.

While we have held the trial court erred in excluding certain evidence regarding the federal courts' interpretations of the SPA, that evidence was not necessarily dispositive of appellees' fraud claims. There were other representations contained in the subject financial documents which the jury could have concluded were false at the time they were made. Likewise, while Robert J. Sabinske may have testified that he did not rely on certain of the

---

[9] It is unclear as to whether Acton is asserting a legal or factual sufficiency point. We need not resolve this question because only consideration of a legal sufficiency point would result in greater relief than has already been granted. *See* TEX. R. APP. P. 90(a).

entries in the documents, there was evidence before the jury from which it may have reasonably concluded that he relied on other allegedly false information in the documents. Thus, there was more than a scintilla of evidence from which the jury could have concluded that the Sabinskes' relied on false representations of Acton. We overrule Acton's twenty-second point of error to the extent it complains of the legal insufficiency of the evidence.

## VI. BREACH OF CONTRACT FINDING

In its twenty-third point of error, Acton challenges the legal sufficiency of the evidence to support the jury's breach of contract finding.[10] Acton does not cite any portion of the record or authority to support this point of error. Therefore, we are not obligated to rule upon it. *Anheuser-Busch Cos., Inc. v. Summit Coffee Co.*, 858 S.W.2d 928, 942 (Tex. App.--Dallas 1993, writ denied) ("An appellate court has no duty to search a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid."), *judgm't vacated on other grounds*, 115 S. Ct. 1309 (1995); *see also* TEX. R. APP. P. 74(f). However, in the interests of justice and liberally construing Acton's argument on appeal, we will consider the merits of Acton's legal argument under its twenty-third point of error.

The thrust of Acton's argument is that the evidence showing breach of contract was contrary to the Fifth Circuit's interpretation of the SPA. We disagree. Based on the record

---

[10] It is unclear as to whether Acton is asserting a legal or factual sufficiency point. We need not resolve this question because only consideration of a legal sufficiency point would result in greater relief than has already been granted. *See* TEX. R. APP. P. 90(a).

before us we can, and have, determined that the Sabinskes alleged breaches of the contract outside the purported scope of the Fifth Circuit opinion. The alleged breaches outside the scope of the Fifth Circuit opinion are supported by more than a scintilla of properly admitted evidence.

We overrule Acton's twenty-third point of error to the extent it complains the evidence was legally insufficient to support the jury's breach of contract claim.

## VII. ACTON'S COUNTERCLAIM FOR TORTIOUS INTERFERENCE

In its twenty-fourth point of error, Acton asserts that the trial court erred in granting Robert J. Sabinske's motion for directed verdict on Acton's tortious interference claim. Acton pleaded a tortious interference claim asserting that Robert J. Sabinske improperly induced RepublicBank to place the $5,000,000 note into default and, as a result, Acton had to make a $250,000 principal payment on the note it was not otherwise required to make.

The $5,000,000 note was a demand note. Acton presented evidence indicating that Robert J. Sabinske met with RepublicBank, informed the bank that Acton was in default under the SPA, indicated that he might have to pursue litigation against Acton and, as a result, Acton might not be able to make payments on the note, and suggested that it would be in the bank's best interest to place the note in default. Robert J. Sabinske also told RepublicBank that he would make sure the bank was not hurt if Acton could not pay the note. It was in Robert J. Sabinske's direct economic interest to have the $5,000,000 paid because the lower the balance on the note, the higher the disbursements to the Sabinskes.

-17-

RepublicBank placed the note in default. In order to reinstate the note, Acton had to make a $250,000 principal payment on the note. The foregoing facts constitute some evidence of tortious interference. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.--Dallas 1989, writ denied) ("A case of wrongful interference with contract is established by findings that: (1) a contract existed that was subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss occurred.").

In his oral motion for directed verdict and on appeal, Robert J. Sabinske asserts that Acton's tortious interference claim was barred by the applicable statute of limitations. However, the Sabinskes never pleaded the statute of limitations with respect to the tortious interference claim nor did the trial court grant a trial amendment. Therefore, the directed verdict cannot be supported on the basis of the statute of limitations. *See* Tex. R. Civ. P. 94.

We sustain Acton's twenty-fourth point of error.

## VIII. THE SABINSKES' CROSS-POINT OF ERROR

In their cross-point of error, the Sabinskes assert that they are entitled to an additional $5,000,000 in exemplary damages because they prevailed on more than one tort theory. Nothing in the record indicates that the Sabinskes requested such relief or objected to the trial court's failure to make such an award. Therefore, the Sabinskes have failed to preserve this argument for appeal. Tex. R. App. P. 52(a). We overrule the Sabinskes'

-18-

cross-point of error.

## IX. NDC'S INTERVENTION

### A. Applicable Law

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. An entity has the right to intervene if it could have brought the same action, or any part thereof, in its own name, or, if the action was brought against it, it would be able to defeat recovery in whole or in part. *Guaranty Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990); *Houston Lighting & Power Co. v. City of San Antonio*, 896 S.W.2d 366, 372 (Tex. App.--Houston [1st Dist.] 1995, no writ). A trial court's striking of a petition in intervention is reviewed under an abuse of discretion standard. *See Guaranty Fed.*, 793 S.W.2d at 657; *Texas Supply Ctr., Inc. v. Daon Corp.*, 641 S.W.2d 335, 337 (Tex. App.--Dallas 1982, writ ref'd n.r.e.). A trial court has broad, though not unlimited, discretion in determining what constitutes sufficient cause. *See Apparel Contractors, Inc. v. Vantage Properties, Inc.*, 620 S.W.2d 666, 668 (Tex. App.--Dallas 1981, writ ref'd n.r.e.). It is an abuse of discretion for a trial court to strike an intervention where: (1) the intervenor has the ability to bring suit in his own right; (2) the intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to effectively protect the intervenor's interests. *See Guaranty Fed.*, 793 S.W.2d at 657; *Duke v. Wilson*, No. 08-94-00043-CV, slip op. at 6-9 (Tex. App.--El Paso May 18, 1995, n.w.h.).

Judicial economy and the need to avoid multiplicity of lawsuits are also factors to consider. *See Guaranty Fed.*, 793 S.W.2d at 658.

## B. Application of Law to Facts

NDC is Acton's wholly owned subsidiary. NDC's intervention alleged that Robert J. Sabinske engaged in improper conduct while he was president of NDC. Each of the claims asserted by NDC were identical to claims asserted by Acton against Robert J. Sabinske, except for a request for declaratory relief not asserted by Acton regarding settlement proceeds from other litigation.[11]

It is undisputed that NDC was entitled, in its own right, to assert the causes of action contained in its plea in intervention. NDC's request for declaratory relief appears to be simple. Certainly, nothing in the record shows it would have appreciably affected the issues to be tried or the length of the trial. NDC's intervention would not have affected the complexity of the case. The interests of the Sabinskes, Acton, and NDC were interwoven. Disposition of the case could reasonably impair or impede NDC's ability to protect any interest it might have in the subject litigation. Thus, NDC's participation was almost essential to NDC's protecting its interests.

NDC's attempted intervention meets the *Guaranty Federal* test for abuse of discretion. Judicial economy and the interests of the parties would have been served by

---

[11] Acton asserted additional causes of action against Robert J. Sabinske.

allowing NDC to intervene. We conclude the trial court abused its discretion in striking NDC's intervention. We sustain NDC's point of error.

## X. DISPOSITION

We sustain Acton's first, third, fourth, sixth, ninth, tenth, and twenty-fourth points of error. We overrule Acton's second, fifth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and twenty-third points of error. We overrule the Sabinskes' cross-point of error. We sustain NDC's point of error.

We do not reach Acton's fourteenth, fifteenth, sixteenth, eighteenth, nineteenth, and twenty-third points of error as Acton could obtain no greater relief under these points than it has already obtained. *See* TEX. R. APP. P. 90(a). For the same reason, we do not reach Acton's seventeenth, twentieth, twenty-first, and twenty-second points of error to the extent these points may be considered factual insufficiency points.

We reverse the trial court's judgment. We order NDC's intervention reinstated. We remand this case to the trial court for further proceedings consistent with this opinion.

WILL BARBER
JUSTICE

Do Not Publish
Tex. R. App. P. 90
911720F.U05

-21-