COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-412-CV

 

 

MCPHERSON ROAD BAPTIST                                                APPELLANT

CHURCH

 

                                                   V.

 

MISSION INVESTORS/FORT                                                     APPELLEE

WORTH, LP

 

                                              ------------

 

         FROM COUNTY COURT AT LAW
NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                       I. 
Introduction








Appellant McPherson Road Baptist Church appeals
the trial court=s granting Appellee Mission
Investors/Fort Worth, LP=s motions for traditional and
no-evidence summary judgment regarding McPherson=s claims
related to Mission=s reservation of mineral rights
to land conveyed to McPherson.  McPherson
raises seven issues.  We will affirm in
part and reverse and remand in part.

                   II. 
Factual and Procedural Background

On February 18, 2003, McPherson and Mission
signed an earnest money contract where Mission would sell McPherson a A+/B 4‑Acre
tract of land located along McPherson Road in the City of Fort Worth, Tarrant
County, Texas.@ 
The contract stated that a Arough
outline@ of the
property was to be attached to the contract as AExhibit >A.=@  The contract also stated that the property
would be Afurther described by a Survey to
be completed prior to Closing.@  The contract specified that McPherson would
have the land surveyed before the closing date specified in the contractCMarch
21, 2003.

By its terms, the contract=s
closing date could be extended by written notice of either party up to a
maximum of thirty days, which would have been April 20, 2003.  The contract also contained a provision entitled
ATime For
Performance@ that stated, ATime is
of the essence under each provision of this Contract.  Strict compliance with the times for
performance is required.@








As part of the earnest money contract, McPherson
deposited $5,000 in earnest money with Commonwealth Land Title Company.[2]  The contract provided, AAt the
Closing, the Earnest Money will be applied to the Purchase Price.@  Per the contract, the purchase price for the
property was $52,500; and McPherson was to pay $12,500 in cash Apayable
at Closing.@ 
The contract also contained a seller financing addendum.  By the addendum=s terms,
McPherson would execute a promissory note at closing payable to Mission in the
amount of $40,000 (the non-cash portion of the purchase price) bearing 7.5%
interest.  The interest was to be
compounded monthly, and the terms of the promissory note were that McPherson
would pay $500 monthly for the first thirty months after purchase and then
$1,500 monthly Athereafter until the Promissory
Note is paid in full.@ 
The contract expressed that Mission was to deliver Afee
simple title@ to McPherson.  Nowhere in the contract is there an express
reservation of mineral rights to Mission.








For reasons that are not clear from the record,
the March 21, 2003 closing date passed without the parties closing on a land
sale transaction.  But on April 23, 2003,
the parties completed a sale of a 4.101‑acre tract of land from Mission
to McPherson.  Except for the closing
date, the April 23, 2003 closing transaction mirrored the terms of the February
18, 2003 earnest money contract.  At the
April 23, 2003 closing, both parties executed a set of documents, including a
warranty deed with vendor=s lien and a standard settlement
statement.  The settlement statement
reflects that the purchase price was $52,500; that Mission=s $5,000
earnest money was applied to the purchase; that the terms of the note carried
would be consistent with those proposed in the February18, 2003 earnest money
contract; and that Mission paid for and provided a survey of the land being
conveyed.  Patricia Galttana, an escrow
officer for Commonwealth, filed a warranty deed executed on April 23, 2003, to
record the conveyance of the 4.101‑acre tract to McPhersonCthe deed
had an express reservation of mineral rights retained by Mission.  At some point after its recording, the county
clerk=s office
sent a copy of the recorded deed to McPherson.[3]








On December 15, 2006, McPherson filed suit
against Mission and others alleging breach of contract, common law and
statutory fraud, and civil conspiracy. 
All of McPherson=s claims relate to McPherson=s
allegation that Mission improperly retained the mineral rights to the land
conveyed in violation of the parties=
agreement.  Neither the February 18, 2003
earnest money contract nor any other document in the summary judgment evidence
purporting to evidence the agreement between the parties indicates an intent to
reserve the mineral estate to Mission. 
The only reference to the mineral rights is in the deed.








Mission answered and filed a traditional motion
for partial summary judgment.  Mission=s
postural stance throughout these proceedings has been that there exist two
distinct contractsCa contract in February and a
contract in April.  In its initial
traditional motion for partial summary judgment, Mission argued that the
February contract was unenforceable as a matter of law because the closing date
was missed, McPherson had not provided a survey on the date detailed in the
February contract, and the contract lacked an adequate legal description.  Mission further moved for summary judgment on
McPherson=s fraud-related claims but
limited its motion to the February contract, specifically arguing that Mission=s fraud
claims were extra-contractual claims barred by the statute of frauds.  In its response to Mission=s
summary judgment motion, McPherson countered that there existed fact questions
concerning:  the terms of the parties= closed
transaction; whether the parties closed under the February 18, 2003 earnest
money contract or some oral extension or modification of that contract; whether
the closing that transpired was in accordance with the February 18, 2003
earnest money contract; and whether the draft deed presented to Mission prior
to the April 23, 2003 closing was changed without the knowledge of or notice to
McPherson and was different than the deed recorded.

On August 6, 2008, the trial court entered an
interlocutory order granting Mission=s motion
for partial summary judgment.  The trial
court=s order
specifically stated that it Ashall
have no effect on [McPherson=s]
claims . . . in connection with the April 23, 2003 real estate
closing, insofar as such claims are not based upon attempted enforcement of the
February 18, 2003 real estate contract.@








On September 9, 2008, Mission filed a second
motion for summary judgment, alleging that it was entitled to traditional and
no-evidence summary judgment on McPherson=s
remaining claims.  McPherson responded
that Mission was improperly trying to paint the transaction between the parties
Aout into
a mini series of events@ rather
than looking at the Afactual background in this case
. . . in toto@ and
that there existed genuine issues of material fact on each of its claims.  On October 9, 2008, the trial court granted
Mission=s second
summary judgment motion.  This appeal
followed.

                                           III.  DISCUSSION

In seven issues, McPherson argues that the trial
court erred in granting Mission=s
traditional and no‑evidence summary judgments pertaining to McPherson=s claims
for statutory and common law fraud, breach of contract, and civil conspiracy.

A.     Standards
of Review for Traditional Summary Judgment

In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R. Civ.
P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979).  The burden of proof is on
the movant, and all doubts about the existence of a genuine issue of material
fact are resolved against the movant.  Sw.
Elec. Power Co., 73 S.W.3d at 215.








When reviewing a summary judgment, we examine the
entire record in the light most favorable to the nonmovant, and we indulge
every reasonable inference and resolve any doubts in the nonmovant=s favor.
 Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005); City of Keller v. Wilson, 168
S.W.3d 802, 822B24 (Tex. 2005).  Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  If the uncontroverted evidence is from an
interested witness, it does nothing more than raise a fact issue unless it is
clear, positive and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted.  Tex. R. Civ. P. 166a(c); Trico Techs.
Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997).  But in reviewing the summary judgment
evidence, we must consider whether reasonable and fair-minded jurors could
differ in their conclusions in light of all of the evidence presented.  See Wal-Mart Stores, Inc. v. Spates,
186 S.W.3d 566, 568 (Tex. 2006); Wilson, 168 S.W.3d at 822B24.  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.  Clear Creek Basin
Auth., 589 S.W.2d at 678.








A defendant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

B.     Breach
of Contract








In its first, fourth, and fifth issues, McPherson
argues that the trial court erred by granting Mission=s
motions for traditional summary judgment pertaining to McPherson=s breach
of contract claim.  Although McPherson=s first
and fifth issues are couched in terms of evidentiary matters, this court agrees
with Mission=s characterization that in these
three issues McPherson is challenging the propriety of the trial court=s
granting Mission=s first and second motions for
traditional summary judgment regarding McPherson=s breach
of contract claim.  The focus of
McPherson=s breach of contract claim is
that Mission failed to perform its duties under the contract for sale of the
4.101‑acre tract of land when Mission conveyed the land to McPherson but
reserved the mineral rights.      The essential elements of a breach of
contract claim are:  (1) the
existence of a valid contract, (2) performance or tendered performance by
the plaintiff, (3) breach of the contract by the defendant, and
(4) resulting damages to the plaintiff. 
Harris v. Am. Prot. Ins. Co., 158 S.W.3d 614, 622B23 (Tex.
App.CFort
Worth 2005, no pet.).  Thus, to prove an
action for breach of contract, a plaintiff must establish the existence of a
valid and enforceable contract.  Id.

A valid and binding contract is formed by:  (1) an offer; (2) an acceptance in
strict compliance with the terms of the offer; (3) a meeting of the minds;
(4) each party=s consent to the terms; and
(5) execution and delivery of the contract with the intent that it be
mutual and binding.  Critchfield v.
Smith, 151 S.W.3d 225, 233 (Tex. App.CTyler
2004, pet. denied) (citing Wal‑Mart Stores, Inc. v. Lopez, 93
S.W.3d 548, 555B56 (Tex. App.CHouston
[14th Dist.] 2002, no pet.)).  Whether
the parties intended to enter into an agreement is generally a question of
fact.  Meru v. Huerta, 136 S.W.3d
383, 390 (Tex. App.CCorpus Christi 2004, no
pet.).  Whether a particular agreement is
an enforceable contract is generally a question of law.  Id.








In this case, through its motions for summary
judgment, Mission challenged the existence of a valid contract that promised to
convey the mineral rights to McPherson. 
Mission attempts to lay the predicate that the February 18, 2003 written
agreement was not a valid contract and thus should be precluded from being
considered to answer the question of whether the agreement was that Mission
would convey to McPherson the mineral rights to the 4.101‑acre tract of
land.  Mission challenges the validity of
the February 18, 2003 earnest money contract in two ways.  First, Mission argues that the February 18,
2003 earnest money contract had expired by its own terms.  Second, Mission argues that the statute of
frauds bars the enforcement of the February 18, 2003 earnest money contract
because it lacks an adequate legal description. 
McPherson argues that it is for a jury to determine what the agreement
between the parties was and that the agreement was partially written, as
evidenced by the February 18, 2003 earnest money contract, and partially oral,
as evidenced by alleged statements made by Mission to McPherson, with the
agreed closing date in the transaction between the parties being the April 23,
2003 closing.  We will address Mission=s
arguments in turn.

1.     The
Earnest Money Contract=s
Expiration Terms








Ordinarily, time is not of the essence in the
performance of a real estate earnest money contract absent a clear intent to
the contrary.  Glass v. Anderson,
596 S.W.2d 507, 511 (Tex. 1980).  This is
true even if the contract specifies a date for performance or sets a date for
the closing.  Atkin v. Cobb, 663
S.W.2d 48, 52 (Tex. App.CSan Antonio 1983, writ dism=d.).  In a time-is-of-the essence contract,
however, a party must perform or tender performance in strict compliance with
the provisions of the contract and within the time prescribed in order to be
entitled to specific performance.  Roundville Partners, L.L.C. v. Jones, 118
S.W.3d 73, 79 (Tex. App.CAustin 2003, pet. denied).  But a time-is-of-the-essence provision in a
contract can be waived. 17090 Parkway, Ltd. v. McDavid, 80 S.W.3d 252,
255 (Tex. App.CDallas 2002, pet. denied).

Waiver is an intentional relinquishment of a
known right or intentional conduct inconsistent with claiming that right.  Cont=l Casing
Corp. v. Siderca Corp., 38 S.W.3d 782, 789 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Waiver may
be written or oral, and it may be shown by circumstances or course of
dealing.  Carpet Servs., Inc. v.
George A. Fuller Co. of Tex., 802 S.W.2d 343, 346 (Tex. App.CDallas
1990), aff=d, 823
S.W.2d 603 (Tex. 1992).  Waiver can be
established by a party=s express renunciation of a
known right, or by silence or inaction for so long a period as to show an
intention to yield the known right.  Aguiar
v. Segal, 167 S.W.3d 443, 451 (Tex. App.CHouston
[14th Dist.] 2005, pet. denied).  Because
waiver is largely a matter of intent, for implied waiver to be found through a
party=s
actions, intent clearly must be demonstrated by the surrounding facts and
circumstances.  Id.

In this case, Mission first argues that the
February 18, 2003 earnest money contract expired under its own terms because
there was a defined date for closing and an express provision detailing that
time is of the essence.  Thus, Mission
argues, because the date of closing in the February 18, 2003 earnest money contract
Acame and
went,@ the
contract terminated by its own terms and is therefore not enforceable.








McPherson contends that Mission never attempted
to terminate the contract.  Specifically,
McPherson argues that Mission never sent notice that the contract was
terminated nor made any demand for a return of McPherson=s
earnest money.

Rhonda Toomer, McPherson=s real
estate agent, pledged in her affidavit that Mission never made an objection,
either verbal or written, to the extension of the closing date.  Toomer also avowed that Mission never
demanded that the earnest moneyCdeposited
at the title company consistent with the February 18, 2003 written agreementCbe
forfeited by McPherson=s failure to close on March 21,
2003, or in any way appeared reluctant to sell the property to McPherson.  James William Hardin, McPherson=s
pastor, pledged that Mission Partners, Inc.=s vice
president Gary Frederick had assured him that the time for closing the
transaction was not paramount, the date had been put in the earnest money
contract merely as a formality, and any delay in closing would not be Aa
problem.@








Mission also argues that the February 18, 2003
earnest money contract expired by its own terms because McPherson did not
complete a survey by March 10, 2003Cthe date
stated in the earnest money contract. 
But Hardin pledged in his affidavit that Mission had informed him that
the survey not being completed by March 10 would not be a hurdle to closing the
transaction.  Furthermore, both parties
agree that McPherson did pay for and furnish a survey for the April closing.

We conclude that McPherson produced competent
controverting evidence to Mission=s stance
that the February 18, 2003 earnest money contract had expired by its own
terms.  There are genuine issues of
material fact concerning whether Mission, through its course of dealings with
McPherson and its failure to claim the right that the February 18, 2003 earnest
money contract had expired prior to closing, waived the closing-date requirement,
the time-is-of-the-essence provision, and the survey requirement.  See Roundville, 118 S.W.3d at 79.

2.     The
Property Description in the Earnest Money Contract








To be valid, a conveyance of real property must
contain a sufficient description of the property to be conveyed.  Tex. Bus. & Com. Code Ann. ' 26.01(b)(4)
& cmt. (Vernon 2009).  A property
description is sufficient if the writing furnishes within itself, or by
reference to some other existing writing, the means or data by which the
particular land to be conveyed may be identified with reasonable certainty.  See AIC Mgmt. v. Crews, 246 S.W.3d 640,
645 (Tex. 2008); see also Broaddus v. Grout, 152 Tex. 398, 402, 258
S.W.2d 308, 309 (1953); Smith v. Sorelle, 126 Tex. 353, 357, 87 S.W.2d
703, 705 (1935).  The description of the
land may be obtained from documents that are prepared in the course of the
transaction, even if those documents are prepared after the contract for sale
is entered into.  See Porter v. Reaves,
728 S.W.2d 948, 949 (Tex. App.CFort
Worth 1987, no writ); see also Jones v. Kelley, 614 S.W.2d 95, 98 (Tex.
1981).  For example, in Porter,
this court held that a ten-acre tract of land to be conveyed under a land sale
contract was adequately described to satisfy the statute of frauds even though
the contract stated that A1/2 of a 20‑acre tract@ of land
was being conveyed.  Porter, 728
S.W.2d at 949.  This court held so
because the location of the tract of land was not in question, the parties had
referenced a drawing of the ten-acre tract being conveyed in the contract, and
the seller was required to furnish a Acurrent
survey@ of the
land being conveyed which was furnished after the land sale contract had been
completed.  Id.








In this case, we conclude that the land was
adequately described in the February 18, 2003 earnest money contract to satisfy
the statute of frauds.  The earnest money
contract states that a A+/B 4‑Acre
tract of land located along McPherson Road in the City of Fort Worth, Tarrant
County, Texas@ was being conveyed.  The contract references a drawing of the
property.[4]  The drawing contains a diagram of the land to
be conveyed that would allow a location of the land.  McPherson paid for and provided a
survey.  A 4.101‑acre tract of land
was described by metes and bounds in the real estate lien note and warranty
deed with vendor=s lien.  And the parties closed the transaction in
accordance with the terms of the earnest money contract entered into on
February 18, 2003.  We hold that the
February 18, 2003 earnest money contract provided the means and data to
identify with reasonable certainty the particular land that was ultimately
conveyed.  See Crews, 246 S.W.3d
at 645.

We sustain McPherson=s first,
fourth, and fifth issues to the extent that McPherson is challenging the trial
court=s
granting Mission=s first and second summary
judgments as to McPherson=s breach of contract claim
because there exist genuine issues of material fact about whether the parties
had agreed to extend the February 18, 2003 earnest money contract=s
closing date and whether Mission breached that contract.

C.     McPherson=s Common
Law and Statutory Fraud Claims








In its second issue, McPherson argues that the
trial court erred in granting Mission=s
traditional motions for summary judgment on McPherson=s common
law and statutory fraud claims.  Mission
argues, as it did in its second motion for summary judgment, that McPherson is
attempting to improperly bring a tort claim and that it cannot do so because
the only injury McPherson actually claims is the economic loss subject to the
contract between the parties.  We agree
with Mission.

1.     Common
Law Fraud

In determining whether an action sounds in
contract or tort, we look first to the source of the duty to act.  Sw. Bell Tel. Co. v. DeLanney, 809
S.W.2d 493, 494 (Tex. 1991).  In
performing this task, we must look to the substance of the cause of action and
not necessarily to the manner in which the action was pleaded.  Jim Walter Homes, Inc. v. Reed, 711
S.W.2d 617, 617B18 (Tex. 1986) (AWhen the
injury is only the economic loss to the subject of a contract itself, the
action sounds in contract alone.@).  A claim ordinarily sounds in contract if the
conduct in question gives rise to liability only as a breach of an agreement
between the parties.  DeLanney,
809 S.W.2d at 494.

We next consider the nature of the remedy or
damages sought by the claimant.  Id.  As the supreme court explained in Reed,
the nature of the injury most often determines the duty breached; when the
injury is only the economic loss to the subject of a contract itself, the
action sounds in contract alone.  Reed,
711 S.W.2d at 618.








Even though McPherson=s
pleadings include loose allegations of misrepresentations, omissions, and the
concealment of a deed switch after closing, the essence of McPherson=s claims
is that it was to receive the mineral rights on the 4.101‑acre tract of
land Mission conveyed at the April closing, and it did not.  Thus, McPherson=s claim
is that Mission breached its alleged contractual obligation to convey the
mineral rights, and the remedy that McPherson ultimately seeks is the
conveyance of those rights.  Accordingly,
McPherson cannot recover tort damages in this case because Mission=s
alleged conduct does not give rise to liability independent of the alleged
contract between McPherson and Mission.  See
Heil Co. v. Polar Corp., 191 S.W.3d 805, 810 (Tex. App.CFort
Worth 2006, pet. denied).  We hold that
the trial court did not err in granting Mission=s
traditional summary judgment regarding McPherson=s common
law fraud claim.

2.     Section
27.01








Section 27.01 of the business and commerce code
provides a statutory cause of action for fraudulent inducement in real estate
transactions.  Tex. Bus. & Com. Code
Ann. ' 27.01
(Vernon 2009).  But just as McPherson
cannot claim common law fraud, it likewise cannot claim statutory fraud in
connection with its claim that Mission breached its contractual promise to
convey the mineral rights.  See
Weinacht v. Phillips Coal Co., 673 S.W.2d 677, 680B81 (Tex.
App.CDallas
1984, no writ).  In order for section
27.01 to apply to a transaction in real estate, the false promise must relate
to something which is collateral, and it must not be the consideration of the
very contract, for breach of which a party sues.  Id. 
In determining whether the promise is collateral to the land transaction
in question, we must always look to the nature of the alleged false
promise.  Id.  Substance, and not form, is the test in
determining whether the promise is collateral.  Id. 
To be collateral, the agreement must be such that the parties would
naturally make it separate from the contract and would not ordinarily be
expected to embody the collateral promise in writing; and it must not be so
clearly connected with the principal transaction as to be part and parcel of
it.  See id.; see also Leyendecker v.
Strange, 204 S.W.2d 845, 847 (Tex. Civ. App.CGalveston
1947, writ ref=d n.r.e.).

In this case, Mission=s
alleged contractual promise to convey the mineral rights to McPherson would not
make a separate agreement collateral to the conveyance of the land.  The mineral rights are clearly connected to
the principal transaction of the land conveyance.  See id.  Thus, McPherson cannot bring a claim under
section 27.01 of the business and commerce code.  We hold that the trial court did not err by
granting Mission=s summary judgment regarding
McPherson=s statutory fraud claim.  We overrule McPherson=s second
issue.  See Weinacht, 673 S.W.2d at
680.  Having overruled McPherson=s second
issue, we decline to address McPherson=s third
issue pertaining to damages under McPherson=s common
law and statutory fraud claims.








D.     McPherson=s Civil
Conspiracy Claim

In its seventh issue, McPherson argues that the
trial court erred by granting summary judgment regarding its civil conspiracy
claim.  McPherson asserts that its claim
was not barred by the two-year statute of limitations because it did not learn
of the civil conspiracy until March 2008. 
See Tex. Civ. Prac. & Rem. Code Ann. ' 16.003
(Vernon Supp. 2008); Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex.
1998).

The general rule is that a cause of action
accrues when a wrongful act causes some legal injury, even when the fact of
injury is not discovered until later, and even if all of the resulting damages
have not yet occurred.  S.V. v. R.V.,
933 S.W.2d 1, 4 (Tex. 1996).  In some
cases, however, the discovery rule may defer accrual of a cause of action until
the plaintiff knew or, by exercising reasonable diligence, should have known of
the facts giving rise to a cause of action. 
HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex.
1998).  In order for the discovery rule
to apply, the nature of the injury must be inherently undiscoverable and the
injury itself must be objectively verifiable. 
Id.  The discovery rule is
an independent ground of defense.  Woods
v. William M. Mercer, Inc., 769 S.W.2d 515, 518 (Tex. 1988).








A defendant moving for summary judgment on the
affirmative defense of limitations has the burden to conclusively establish
that defense.  KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  Thus, to be entitled to summary judgment,
Mission had to (1) conclusively prove when the civil conspiracy cause of
action accrued and (2) negate the discovery rule, if it applies, by
proving as a matter of law that there is no genuine issue of material fact
about when McPherson discovered, or in the exercise of reasonable diligence
should have discovered, the nature of its alleged injury.  See id.

The summary judgment evidence establishes that
McPherson received the deed reserving mineral rights to Mission after it was
recorded in 2003.  McPherson filed its
original petition asserting civil conspiracy on December 15, 2006.  Thus, even if the discovery rule applies,
Mission has shown that there is no genuine issue of material fact that
McPherson, in the exercise of reasonable diligence, should have discovered that
Mission had not conveyed the mineral rights when the deed was recorded and sent
to McPherson in 2003.  Therefore, the
trial court did not err by granting summary judgment that McPherson=s civil
conspiracy claim was barred by the two-year statute of limitations.  We overrule McPherson=s
seventh issue.








E.     Attorney=s Fees

In its sixth issue, McPherson argues that the
trial court erred by granting summary judgment in favor of Mission on the issue
of attorney=s fees.  We agree.

McPherson pleaded that it was entitled to
attorney=s fees
under civil practice and remedies code section 38.001, which provides that A[a]
person may recover reasonable attorney=s fees
. . . if the claim is for . . . an oral or written
contract.@ 
Tex. Civ. Prac. & Rem. Code Ann. ' 38.001
(Vernon 2008).  Because we sustain
McPherson=s issues related to its breach
of contract claim, it is still undetermined who will be the prevailing party on
that claim.

If McPherson prevails in a trial on the merits,
it could be entitled to attorney=s
fees.  See id.; see also Toshiba Mach.
Co., Am. v. SPM Flow Control, Inc., 180 S.W.3d 761, 783 (Tex. App.CFort
Worth 2005, pet. granted, judgm=t
vacated w.r.m.) (discussing the factors considered when a party may recover
reasonable attorney=s fees for a valid breach of
contract claim).  Therefore, we also
sustain McPherson=s sixth issue and remand the
issue of attorney=s fees back to the trial court
pending the ultimate determination of McPherson=s breach
of contract claim.








                                        IV. 
Conclusion

Having sustained McPherson=s first,
fourth, and fifth issues, we reverse and remand McPherson=s breach
of contract claim to the trial court for proceedings consistent with this
opinion.  Also, having sustained
McPherson=s sixth issue, we reverse and
remand McPherson=s claim regarding attorney=s
fees.  Having overruled McPherson=s second
issue relating to its statutory and common law fraud claims, having overruled
McPherson=s seventh issue regarding its
civil conspiracy claim, and not addressing McPherson=s third
issue regarding the trial court=s
granting Mission=s no‑evidence summary
judgment on damages related to McPherson=s
statutory and common law fraud claims, we affirm the trial court=s
judgment on these issues.

 

 

PER
CURIAM

 

 

PANEL:  MEIER,
WALKER, and MCCOY, JJ.

 

DELIVERED:  August
20, 2009











[1]See Tex. R. App. P. 47.4.





[2]McPherson originally sued
Mission, attorney Michael W. Broome, Michael W. Broome, P.C., Commonwealth Land
Title Insurance Company, and Mission Partners, Inc.  Broome=s relationship to the transaction is not entirely
clear from the record, but McPherson nonsuited its claims against Broome on
March 13, 2008.  McPherson also nonsuited
its claims against Mission Partners, Inc. on July 7, 2008.  In what appears to be a coordinated effort by
both parties= attorneys and the trial
court, the trial court allowed McPherson to sever its claims against
Commonwealth into a separate cause of action and Mission nonsuited its
counterclaims against McPherson so that the order granting summary judgment
would be final and appealable.





[3]James William Hardin,
McPherson=s pastor, testified in
his deposition that McPherson had received the deed A60 days or so after@ the April 23, 2003
closing.





[4]Mission provided the
drawing as evidence to support its first summary judgment motion.