SOUTHWESTERN BELL TELEPHONE
COMPANY, Petitioner,

v.

Eugene C. DeLANNEY, Respondent.

No. C–8282.

Supreme Court of Texas.

March 6, 1991.

Rehearing Overruled June 19, 1991.

Andrew J. Mytelka, John A. Buckley, Jr., Galveston, Richard Billeaud, Houston, for petitioner.

Anthony P. Griffin, Galveston, for respondent.

## OPINION

PHILLIPS, Chief Justice.

We consider whether a cause of action for negligence is stated by an allegation that a telephone company negligently failed to perform its contract to publish a Yellow Pages advertisement. The court of appeals held that the company's failure to perform its contract was a basis for recovery in tort as well as contract, and that the clause limiting the telephone company's liability could not apply to limit tort damages. 762 S.W.2d 772. We reverse the judgment of the court of appeals and render judgment in favor of Bell.

### Facts

Eugene DeLanney advertised his real estate business in the Galveston Yellow Pages for several years. For the 1980–1981 directory, he again contracted with Bell for a Yellow Pages advertisement. At this time DeLanney had two business phones, a rotary line and a single line. Prior to publication of the 1980–1981 directory, DeLanney's wife asked Bell to cancel the single line and add a third number to their existing rotary line. The Yellow Pages advertisement was billed to DeLanney's single line. When that line was canceled, DeLanney's Yellow Pages advertisement was automatically deleted from the directory due to Bell's internal procedures.

When the advertisement was not published as promised, DeLanney sued Bell, alleging negligence and violation of the Texas Deceptive Practices—Consumer Protection

Act ("DTPA"), Tex.Bus. & Com.Code §§ 17.-41–17.63. Bell answered and urged by special exception that DeLanney's petition failed to state a cause of action for negligence. No ruling was made on this special exception, and DeLanney proceeded to trial on both claims.

After DeLanney rested his case in chief, Bell moved for a directed verdict on both theories of liability. The trial court granted Bell's motion as to the DTPA claim, but denied it as to negligence. The remaining issues were submitted to a jury.

The jury found that Bell was negligent in omitting DeLanney's advertisement from the Yellow Pages and that such negligence was a proximate cause of damages to DeLanney. The jury assessed these damages at $109,000 for lost profits in the past and $40,000 for lost profits in the future. After ordering a partial remittitur which reduced future lost profits to $21,480, the trial court rendered judgment for DeLanney. Bell appealed.

### Breach of Contract or Negligence

The court of appeals, with one justice concurring and one justice dissenting, affirmed. A majority of the court held that Bell's cancellation of DeLanney's Yellow Pages advertisement was correctly submitted as a negligence claim. The dissenting justice argued that because DeLanney sought damages for breach of a duty created under the contract, rather than a duty imposed by law, the claim sounded only in contract. We agree with the dissent.

The majority below relied on *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947), where we quoted from 38 Am.Jur. *Negligence* § 20 (1941) as follows:

> Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.

In *Scharrenbeck*, the defendant agreed to repair a water heater in plaintiff's home. A short time after repair, the heater ignited the roof, destroying the house and its contents. Although the contract obligated the defendant to put the water heater back in good working order, the law also implied a duty to the defendant to act with reasonable skill and diligence in making the repairs so as not to injure a person or property by his performance. In failing to repair the water heater properly, the defendant breached its contract. In burning down plaintiff's home, the defendant breached a common-law duty as well, thereby providing a basis for plaintiff's recovery in tort.

The principle recognized in *Scharrenbeck* has also been recognized by commentators in this area. As one prominent authority has explained: "Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 92 at 655 (5th Ed.1984) [hereinafter "Prosser and Keeton"]. If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.[1]

In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *See* Prosser and Keeton at 656; 1 J. Edgar, Jr. & J. Sales, Texas Torts and Remedies § 1.03[4][b] at 1–36 (1990). We applied this analysis in *Jim Walter Homes,*

---

1. Of course, some contracts involve special relationships that may give rise to duties enforce-able as torts, such as professional malpractice.

*Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986), where we wrote:

> The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the *economic loss* to the subject of a contract itself the action sounds in contract alone.

■ Bell's duty to publish DeLanney's advertisement arose solely from the contract. DeLanney's damages, lost profits, were only for the economic loss caused by Bell's failure to perform. Although De-Lanney pleaded his action as one in negligence, he clearly sought to recover the benefit of his bargain with Bell. We hold that Bell's failure to publish the advertisement was not a tort.[2] Under our analysis in *Reed,* DeLanney's claim was solely in contract.

■ DeLanney, however, did not request jury questions on breach of contract. Because the jury was asked only questions as to liability resulting from Bell's negligence, DeLanney waived any claim for breach of contract. *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990) (the plaintiff has the "burden to obtain affirmative answers to jury questions as to the necessary elements of his cause of action") (citing Tex.R.Civ.P. 279).

■ DeLanney did obtain an affirmative answer to the question whether there was a disparity in bargaining power between the parties in negotiating the Yellow Pages agreement. The court of appeals correctly determined that disparity in bargaining power is irrelevant in a negligence suit. Perhaps the issue was submitted because DeLanney pled that Bell's conduct was unconscionable under the DTPA. Because of his failure to comply with the notice requirements of the DTPA, however, DeLan-

ney's entire cause of action under the DTPA, including any claim of unconscionability, was dismissed by a directed verdict. For this reason, and because DeLanney submitted no contract issues, the jury finding concerning disparity of bargaining power is of no effect.

For the foregoing reasons, the judgment of the court of appeals is reversed, and judgment is rendered that DeLanney take nothing.

GONZALEZ and DOGGETT, JJ., concur.

MAUZY, J., dissents.

GONZALEZ, Justice, concurring.

I agree with the court that Bell's failure to publish the advertisement was not a tort and that it sounded solely in contract. I also agree that DeLanney failed to discharge his burden to obtain affirmative findings to jury questions on the contract. However, I do not fault the court of appeals for its confusion. We have muddled the law of "contorts" and an all encompassing bright line demarcation of what constitutes a tort distinct from breach of contract has proven to be elusive. *See generally* W. PROSSER & W. KEETON, THE LAW OF TORTS § 1 (5th ed. 1984); *see also American Nat'l Petro. Co. v. Transcontinental Gas Pipe Line Corp.,* 798 S.W.2d 274, 280 (1990) (Gonzalez, J., dissenting).

DeLanney and the court of appeals rely heavily on the statement in *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947), that:

> Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these con-

---

2. Prosser and Keeton suggest seven generalizations as helpful in distinguishing between tort and contract liability. Those which are useful to this case include: (1) obligations imposed by law are tort obligations; (2) misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things; (3) recovery of intangible economic losses is normally determined by contract law; and (4) there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. PROSSER AND KEETON at 656–57.

ditions is a tort, as well as a breach of the contract.

Despite this broad language, not every breach of contract accompanied by negligence creates a cause of action in tort. In *International Printing Pressman & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735 (1946), we acknowledged that no single concise rule will define the rights of parties in every situation. We nonetheless wrote:

[G]enerally speaking, "actions in contract and in tort are to be distinguished in that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law...." "[I]f the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is, in substance an action on the contract, whatever may be the form of the pleading." (citations omitted).

*Id.*, 198 S.W.2d at 735. I believe that this formulation comes closer than *Scharrenbeck* to stating a general rule to distinguish contract from tort and that the broad language in *Scharrenbeck* must be read in light of the particular circumstances of that case. The opinion in *Scharrenbeck* is correct in its observation that a contract may be the occasion that brings the parties together, but it is the relationship or situation of the parties that gives rise to a duty in law, the breach of which is a tort. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex.1990). Had Montgomery Ward repaired the water heater gratuitously, it would have owed Scharrenbeck a duty not to create a dangerous condition. *See Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex.1976); *Fox v. Dallas Hotel Co.*, 111 Tex. 461, 240 S.W. 517, 520 (1922); RESTATEMENT (SECOND) OF TORTS § 323 (1965). Thus the duty to not create a dangerous condition existed independent of any contractual relationship.

In summary, when a party must prove the contents of its contract and must rely on the duties created therein, the action is "in substance an action *on the contract*, even though it is denominated an action for negligent performance of the contract." *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 368 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (emphasis in original).

### Bell's Duty

The majority in the court of appeals also suggested that negligence was a proper theory because Bell carelessly deleted DeLanney's advertisement while making changes to his telephone service. In this manner, the court endeavored to connect the omission of the Yellow Pages advertisement to Bell's duty of public service.

The gravamen of DeLanney's complaint, however, was not with his telephone service, which was changed according to request and apparently to his satisfaction. Rather, his complaint was with Bell's failure to publish his advertisement as promised, and this was a matter of private contract. *A–ABC Appliance, Inc. v. Southwestern Bell Tel. Co.*, 670 S.W.2d 733, 735 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Although Bell is a regulated public utility, all of its functions are not in the realm of public service. The "printing, distribution, or sale of advertising in telephone directories" is not a public service function. TEX. REV.CIV.STAT.ANN. art. 1446c, § 3(s) (Vernon Supp.1991).

### Limitation of Liability

The connection drawn by the court of appeals between the Yellow Pages advertisement and DeLanney's telephone service also affected the court's view regarding the validity of a limitation of liability clause contained in the contract between Bell and DeLanney. This clause provided:

The applicant agrees that the telephone company shall not be liable for errors in or omissions of the directory advertising beyond the amount paid for the directory advertising omitted in which error occurs for the issue life of the directory involved.

DeLanney argued that the clause was unenforceable and, in the context of DeLan-

ney's negligence claim, the court of appeals agreed. 762 S.W.2d at 776.

In an apparent attempt to resolve conflicting decisions, the court of appeals suggested that the clause might be enforced to limit a claim for breach of contract, *see Wade v. Southwestern Bell Tel. Co.*, 352 S.W.2d 460 (Tex.Civ.App.—Austin 1961, no writ), but could not be applied to limit liability for negligence. *See Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *see also Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188 (5th Cir. 1986). The conflict between *Wade* and *McKinnon* mirrors a larger split of authority regarding the validity of such limitation of liability clauses. *See* Annotation, *Liability of Telephone Company for Mistakes in or Omissions From its Directory*, 47 A.L.R. 4th 882 (1986).

*McKinnon* follows a minority line of cases which refuse to enforce such provisions. *See Morgan v. South Cent. Bell Tel. Co.*, 466 So.2d 107 (Ala.1985); *Allen v. Michigan Bell Tel. Co.*, 61 Mich.App. 62, 232 N.W.2d 302 (1975); *Rozeboom v. Northwestern Bell Tel. Co.*, 358 N.W.2d 241 (S.D.1984); *Discount Fabric House, Inc. v. Wisconsin Tel. Co.*, 117 Wis.2d 587, 345 N.W.2d 417 (1984). The unifying theme of these decisions is that directory advertising is a unique advertising medium inextricably linked to the telephone company's public service function. Thus on the premise of Bell's status as a public utility monopoly, these courts have rejected the limitation of liability as contrary to the public interest or unconscionable.

A larger number of jurisdictions, however, have upheld similar liability limitation clauses for directories. In *Helms v. Southwestern Bell Telephone Co.*, the Fifth Circuit lists decisions from twenty-six states which have upheld similar clauses. *Helms*, 794 F.2d at 192 n. 9; *see generally* Annotation, *Liability of Telephone Company for Mistakes in or Omissions From its Directory*, 47 A.L.R. 4th 882. These decisions have generally recognized Yellow Pages

advertising to be a matter of private contract, rather than a public service function. The majority view is compatible with Texas law, which also excludes the sale of advertising in directories from Bell's public service function. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 3(s); *see also A–ABC Appliance*, 670 S.W.2d at 735. I therefore believe that the majority view presents the sounder approach.

*Unconscionability*

Even though the Yellow Pages is a matter of private contract, DeLanney may still recover the full value of the consequential damages caused by Bell's breach of contract if the clause limiting Bell's liability is unenforceable because a court may deny enforcement of an unconscionable clause or contract. *See Tri–Continental Leasing Corp. v. Burns*, 710 S.W.2d 604, 609 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (Levy, J., dissenting); *see also Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 159–60 (1951); Restatement (Second) of Contracts § 208 (1979); Tex.Bus. & Com.Code Ann. § 2.302 (Tex.UCC) (Vernon 1968). We must consider then whether the clause limiting Bell's liability for errors or omissions to the cost of the Yellow Pages advertising is unconscionable under the circumstances of this case.

DeLanney argues that it is. Because he had no meaningful choice and no bargaining power in the transaction, he contends that his contract with Bell was one of adhesion. Yellow Pages was the only commercial telephone directory in DeLanney's market area at the time. The only way to buy space in this directory was on Bell's terms dictated through a non-negotiable, standardized contract. DeLanney concludes that his inability to negotiate more favorable terms rendered the limitation of liability clause unenforceable. In support of this argument, he relies on a jury finding that a disparity in bargaining power existed between himself and Bell when the contract was made.[1]

---

1. The following question was submitted to the jury over Bell's objections:

Do you find from a preponderance of the evidence that there was a disparity of bargain-

Bell responds that the validity of the clause limiting liability was not a question of fact for the jury, but one of law for the court. I agree.[2] This is clearly the case under the Uniform Commercial Code. TEX. BUS. & COM.CODE § 2.302 comments 1 & 3 (Tex.UCC) (Vernon 1968); G. WALLACH, THE LAW OF SALES UNDER THE UNIFORM COMMERCIAL CODE ¶ 5.04 at 5–5 (1981); see also RESTATEMENT (SECOND) OF CONTRACTS § 208, comment f (1979). Although the UCC does not expressly apply to service transactions, such as the sale of advertising in the Yellow Pages, the provision pertaining to unconscionability "has been applied to numerous transactions outside the coverage of Article 2 of the Code." J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 9–39 at 420 (3d Ed.1987); see also J. WHITE & R. SUMMERS, THE UNIFORM COMMERCIAL CODE § 4–32 at 200 (3d ed. 1989).

I also agree with Bell that bargaining disparity alone does not establish unconscionability. Comments to the UCC indicate that the principle of unconscionability is "not of disturbance of allocation of risks because of superior bargaining power." TEX.BUS. & COM.CODE ANN. § 2.302 comment 1. A comment to the Restatement provides that a "bargain is not unconscionable merely because the parties to it are unequal in

bargaining position, nor even because the inequality results in an allocation of risks to the weaker party." RESTATEMENT (SECOND) OF CONTRACTS § 208 comment d. The Code and Restatement thus agree that a disparity in bargaining power, while relevant, is not the litmus test for unconscionability. See Wade v. Austin, 524 S.W.2d 79, 85–86 (Tex.Civ.App.—Texarkana 1975, no writ). Something more must be shown.

How much more is a difficult question, however, because the term unconscionable has no precise legal definition. Courts and commentators have struggled with its meaning. In Wade v. Austin, the court wrote that a determination of unconscionability must be made from "the entire atmosphere in which the agreement was made." Id. at 86. One authority has written that unconscionability cannot be defined because "(i)t is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." 1 J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 4–3 at 203 (3d ed. 1988) (emphasis in original). The UCC[3] and Restatement[4] recognize the doctrine of unconscionability, but provide only a rough outline of its meaning.

Although many factors are relevant and no single formula exists,[5] proof of a claim

---

ing power between the plaintiff and the defendant in negotiating the contract for Yellow Page advertising.
Instruction: A disparity of bargaining power exists when one party has no real choice in accepting an agreement limiting the liability of the other party.
The jury found there was a disparity of bargaining power.

2. Here we are concerned with unconscionability under the common law as distinguished from unconscionability under the DTPA. The DTPA defines "unconscionable action or course of action" and, unlike the common law, makes it an issue of fact for the jury. Tex.Bus. & Com.Code Ann. § 17.45(5); see also Chastain v. Koonce, 700 S.W.2d 579, 582 (Tex.1985).

3. The comment to UCC section 2.302 provides:
The basic test is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.... The principal is one of the preven-

tion of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power.
Tex.Bus. & Com.Code Ann. § 2.302 comment 1.

4. A comment to section 208 of the Restatement provides:
The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy.
RESTATEMENT (SECOND) OF CONTRACTS § 208 comment a (1979).

5. The Supreme Court of Kansas has identified ten factors as useful aids in determining unconscionability questions. They are: (1) the use of printed form contracts drawn by the party in the strongest economic position, which establish industry-wide standards offered on a take it or

of unconscionability begins with two broad questions: (1) How did the parties arrive at the terms in controversy; and (2) Are there legitimate commercial reasons which justify the inclusion of these terms? Mallor, *Unconscionability in Contracts Between Merchants*, 40 Sw.L.J. 1065, 1072 (1986); 1 J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE, § 4–3, 4–4 (3d ed. 1988); J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS, § 9–40 (3d.1987); R. HILLMAN, J. McDONNELL & S. NICKLES, COMMON LAW AND EQUITY UNDER THE UNIFORM COMMERCIAL CODE ¶ 6.02[2][b–d] (1985); *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445 (DC Cir.1965). The first question, often described as the procedural aspect of unconscionability,[6] is concerned with assent and focuses on the facts surrounding the bargaining process. Mallor, *Unconscionability in Contracts Between Merchants*, 40 Sw.L.J. 1065, 1072 (1986). The second question, often described as the substantive aspect of unconscionability, is concerned with the fairness of the resulting agreement. *Id.*

DeLanney concentrates on the procedural aspect, emphasizing the absence of any meaningful choice in the bargain. Bell, on the other hand, contends that the provision was nevertheless fair and reasonable under the existing commercial circumstances.

Bell submits that its contract merely sought to reallocate the commercial risk inherent in its business in a reasonable manner. This risk existed because the directory was to run for one year and mistakes could not be corrected during this period. Bell contends that the enormous benefit derived from Yellow Pages advertising by some subscribers when compared

to the relatively modest amount charged by Bell, coupled with Bell's inability to mitigate damages, created a business risk it needed to reallocate. This it attempted to do by limiting its liability.

Bell further submits that the clause limiting liability was not one-sided or grossly unfair because it benefitted both parties. It benefitted the subscriber by keeping Yellow Pages rates low in relation to other types of advertising and in relation to the return expected by the subscriber. It benefitted Bell by shielding it from a risk of potential liability which was out of proportion to the consideration charged by Bell. Although it would not negotiate, Bell argues that DeLanney had other suitable advertising alternatives such as newspapers, magazines, direct mail, phone solicitation, the Multiple Listing Service, Board of Realtors, yard signs, radio and television. After weighing all of the above, I am not convinced that the clause limiting Bell's liability for errors or omissions to the cost of the Yellow Pages advertising is unconscionable.

For the foregoing reasons, I concur with the judgment.

DOGGETT, Justice, concurring.

I concur in the court's judgment but write separately because it should, and could, be based solely upon our holding in *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). Today's brief writing concerning the nature of torts and contracts unnecessarily adds more confusion than clarity.

leave it basis; (2) excessive price; (3) a denial of basic rights and remedies to a consumer buyer; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including commercial setting; (6) the hiding of disadvantageous clauses in a mass of fine print or in inconspicuous places; (7) phrasing clauses in language that is incomprehensible to a layman or that diverts his attention from the problems they raise; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated, and the illiterate; and (10) inequality of bargaining or economic power. *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 549 P.2d 903, 906–07 (1976).

**6.** As a framework for decision commentators and courts have generally followed the analysis proposed by Professor Arthur Leff. Leff, *Unconscionability and the Code—The Emperor's New Clause*, 115 U.Pa.L.Rev. 485, 487 (1967). Professor Leff labelled the different types of unconscionability as "substantive" and "procedural," distinguishing the content of the contract from the process by which the allegedly offensive terms found their way into the agreement.

The court does recognize that in some as yet unspecified instances a tort action may lie between contracting parties. It appropriately observes that a tort action may arise based upon a number of relationships that could be created by contract. Although the court offers only one example of a contractual relationship creating duties the breach of which gives rise to actions both in tort and contract, at 497 n. 1 (the relationship between a professional and client), our developing jurisprudence recognizes others. *See, e.g., Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex. 1990) (relationship between insured and insurer). In addition, the court correctly recognizes that the breach of certain common-law duties creates liability in tort; the existence of a contract does not alter those duties.

It is thus incumbent upon the trial courts not to begin and end their inquiry with the contract but to examine the circumstances surrounding the parties' relationship, including any duties imposed by law, in determining whether a tort action may be maintained.

MAUZY, Justice, dissenting.

I respectfully dissent. The contractual relationship creates duties not only under contract law, but under tort law as well. A contract may create the state of things which furnishes the occasion for the tort. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947).

Every contract is accompanied by a duty to perform that contract with care, skill, reasonable expedience and faithfulness. The negligent failure to observe any of the conditions imposed by this duty constitutes a tort. *Id.* In determining whether the action is one in contract or tort or both, the court must look to the substance of the cause of the action, and not necessarily the manner in which it was pleaded. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617,

617–18 (Tex.1986) (citing *International Printing Pressman and Ass't Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (1946)). When the injury involves failure to perform a contract and the only loss is that economic loss that is the substance of the contract itself, the action sounds only in contract and not in tort. *Jim Walter Homes,* 711 S.W.2d at 618.

This case involves more than the mere failure to perform or negligent performance of the Yellow Pages contract. The action of Bell that gave rise to DeLanney's tort cause of action was the negligent performance of its contract to provide telephone service to DeLanney, not the negligent performance of its contract to provide the Yellow Pages advertisement. DeLanney had two contracts with Bell. For several years he had contracted with Bell for Yellow Pages advertisements, and he had already contracted with Bell for a 1980–81 Yellow Pages listing prior to the incident the subject of this lawsuit. In addition to the Yellow Pages advertisement contract, DeLanney had a separate contract with Bell for telephone service. Prior to the publication of the 1980–81 telephone directory, DeLanney contracted to alter his telephone service by canceling his single line and adding a third number to his two-number rotary line. When the alteration of the telephone service was requested, the separate contract for the Yellow Pages advertisement was not modified or even mentioned by either party. Cancellation of the single telephone line, pursuant to the telephone service contract, resulted in the cancellation of the Yellow Pages advertisement because the advertisement was billed to that number. The Yellow Pages advertisement itself was not even contemplated within the telephone service contract. It was the negligent performance of the telephone service contract that the jury found was the proximate cause of DeLanney's damages.[1] Southwestern Bell breached its

---

1. In its answers to the special issues, the jury specifically found Bell to be negligent.

Issue (1)(a) Whether *Bell was negligent in* failing to inform DeLanney that the installa-

tion of a rotary system would cancel the Yellow Pages listing.
Issue (1)(b) Whether Bell was negligent in failing to adequately train and inform its employees that an order to cancel one of the

duty to perform the telephone service contract with care, skill and faithfulness. The negligent performance of the telephone service contract caused damages to DeLanney that were unrelated to the subject of the telephone service contract. If Bell had not negligently performed the telephone service contract, DeLanney's advertisement would have been published as it had been in the past.

To confine DeLanney to recovery in contract, when his damages clearly extend beyond the contract itself, is to step back into the days of the common-law forms of action. Originally, forms of action were rigidly prescribed, and a plaintiff had no cause of action unless he could fit his claim "into the form of some existing and recognized writ." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 6 at 28 (5th ed. 1984); *see Nelson v. Krusen*, 678 S.W.2d 918, 932 (Tex. 1984) (Kilgarlin, J., concurring and dissenting). Texas, though, has never adopted the old forms of action; thus, "it makes no difference in what shape a plaintiff presents his cause of action, the courts will look to the substance of it, and not be controlled by the mere form in which it is set forth." *Rector v. Orange Rice Mill Co.*, 100 Tex. 591, 102 S.W. 402, 403 (1907). The option to proceed in contract or tort is available not to diminish the plaintiff's rights, but rather to afford the plaintiff a suitable remedy. *See Briggs v. Rodriguez*, 236 S.W.2d 510, 514–15 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.).

"In jurisdictions where the old forms of action have been totally abolished, there should be nothing left of the whole doctrine excepting a few historical echoes." Corbin, *Waiver of Tort and Suit in Assumpsit*, 19 Yale L.J. 221, 246 (1910). The echo heard from the majority today is out of tune with modern jurisprudence, and wrongly deprives DeLanney of an adequate remedy at law.

telephone numbers would cancel the Yellow Pages advertisement; and

Issue (1)(c) Whether Bell was negligent in failing to recognize that the automatic cancellation of the Yellow Pages advertisement

This case was correctly tried in the trial court. The jury's verdict formed the basis of the trial court's judgment, which the court of appeals rightly affirmed. I would affirm the judgment of the court of appeals.

would occur when the billing procedure was changed.

The jury further found that each of these acts of negligence proximately caused DeLanney's injuries.