Opinion issued February 4, 2010












 




In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00855-CV






ASHKAR ENGINEERING CORPORATION, Appellant


v.


GULF CHEMICAL & METALLURGICAL CORPORATION, Appellee






On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2008-66374






MEMORANDUM OPINION


 This is an interlocutory appeal in an industrial construction design defect suit. 
Appellant, Ashkar Engineering Corporation, appeals from the trial court's order
denying its motion to dismiss the suit brought against it by appellee Gulf Chemical
& Metallurgical Corporation ("GCMC"). In its sole issue, Ashkar contends that
GCMC's suit constitutes a claim against a licensed professional engineering firm and
that GCMC failed to file a certificate of merit, as required by Texas Civil Practice and
Remedies Code section 150.002. (1) 

 We reverse and remand.

Background

 In May 2005, GCMC contracted with Miner-Dederick Constructors, Inc., (2) to
construct an expansion to GCMC's hazardous materials recycling facility. The
project was substantially completed on January 10, 2006, and GCMC began using the
new facility. Six months later, GCMC employees noticed an oily sheen in a nearby
stormwater ditch. GCMC subsequently determined that potentially hazardous
substances were leaking from a failed expansion joint contained in the new
construction. To comply with state and federal regulations, GCMC incurred costs to
contain the leak and remediate the contaminated soil. 

 In November 2008, GCMC sued Miner-Dederick for damages. 

 On June 17, 2009, in its First Amended Petition, GCMC added Ashkar, who
had engineered and designed the new facility, as a defendant. Texas Civil Practice
and Remedies Code Section 150.002 requires that a plaintiff, in a suit for damages
arising out of services by a design professional, to file with the complaint a
"certificate of merit"--the affidavit of a third-party licensed professional engineer. (3) 
It is undisputed that GCMC did not file a certificate of merit. On June 23, 2009,
GCMC filed a Second Amended Petition, but it did not file a certificate of merit. 

 On July 17, 2009, Ashkar moved to dismiss GCMC's suit on the basis that
GCMS's allegations constituted claims arising out of services by a design
professional and that GCMC had failed to file the requisite certificate of merit.

 On July 23, 2009, GCMC filed a Third Amended Petition, to which it appended
a certificate of merit. On September 8, 2009, the trial court denied Ashkar's motion
to dismiss. This appeal ensued. 

Certificate of Merit


 Ashkar contends that the trial court erred by denying its motion to dismiss
GCMC's suit for failure to timely file a certificate of merit. 

A. Standard of Review

 An order denying a motion to dismiss under Chapter 150 of the Civil Practice
and Remedies Code is immediately appealable as an interlocutory order. (4) 

 We review a trial court's decision on a motion to dismiss a case for failure to
comply with section 150.002 for an abuse of discretion. Palladian Bldg. Co. v.
Nortex Found. Designs, Inc., 165 S.W.3d 430, 433 (Tex. App.--Fort Worth 2005, no
pet.); see also Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006) (applying in
context of professional negligence suits). A trial court abuses its discretion if it acts
arbitrarily, unreasonably, or without reference to guiding rules or principles when it
dismisses, or refuses to dismiss, a claim. Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003); Palladian Bldg., 165 S.W.3d at 433. However, if resolution of the issue
requires us to construe statutory language, we review under a de novo standard. See
Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009); Palladian
Bldg., 165 S.W.3d at 436 (citing Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314,
318 (Tex. 2002)). Once we determine the proper construction of the statute, we
determine whether the trial court abused its discretion in the manner in which it
applied the statute to the instant case. See Palladian Bldg., 165 S.W.3d at 436. 


B. Applicable Law

 At the time GCMC filed its suit against Ashkar, Civil Practice and Remedies
Code section 150.002, titled "Certificate of Merit," provided, in relevant part, as
follows:

(a) In any action or arbitration proceeding for damages arising out
of the provision of professional services by a design
professional, the plaintiff shall be required to file with the
complaint an affidavit of a third party licensed architect or
licensed professional engineer competent to testify, holding the
same professional license as, and practicing in the same area of
practice as the defendant, which affidavit shall set forth
specifically at least one negligent act, error, or omission claimed
to exist and the factual basis for such claim. The third party
professional engineer or licensed architect shall be licensed in
this state and actively engaged in the practice of architecture or
engineering. (5)

(b) The contemporaneous filing requirement of Subsection (a) shall
not apply to any case in which the period of limitation will
expire within 10 days of the date of filing and, because of such
time constraints, the plaintiff has alleged that an affidavit of a
third-party architect or professional engineer could not be
prepared. In such cases, the plaintiff shall have 30 days after the
filing of the complaint to supplement the pleadings with the
affidavit. The trial court may, on motion, after hearing and for
good cause, extend such time as it shall determine justice
requires. (6)


(c) The defendant shall not be required to file an answer to the
complaint and affidavit until 30 days after the filing of such
affidavit. (7)

(d) The plaintiff's failure to file the affidavit in accordance with
Subsection (a) or (b) shall result in dismissal of the complaint
against the defendant. This dismissal may be made with
prejudice. (8)

. . . .


C. Analysis

 Statutes must be construed as written and the legislative intent determined,
when possible, from the express terms. Tex. Gov't Code Ann. § 311.023 (Vernon
2005); Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237 S.W.3d 869, 873
(Tex. App.--Houston [1st Dist.] 2007, pet. denied). "Where text is clear, text is
determinative of that intent." Summers, 282 S.W.3d at 437. Words and phrases must
be read in context and construed according to rules of grammar and common usage. 
Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). Words and phrases that have
acquired a technical or particular meaning, whether by legislative definition or
otherwise, shall be construed accordingly. Id. § 311.011(b). Unless a word is used
with reference to a particular trade or subject matter or is a word of art, the word must
be given its ordinary meaning. Tex. Gov't Code Ann. § 312.002 (Vernon 2005). 

 We presume that the entire statute is to be effective and that a just and
reasonable result is intended. See Gutierrez, 237 S.W.3d at 873. "In construing a
statute, whether or not the statute is considered ambiguous on its face, a court may
consider among other matters" the: (1) objective to be obtained; (2) circumstances
under which the statute was enacted; (3) legislative history; (4) common law or
former statutory provisions, including laws on the same or similar subjects; (5)
consequences of a particular construction; (6) administrative construction; and (7) the
caption, preamble, and emergency provisions. Tex. Gov't Code Ann. § 311.023;
but see Summers, 282 S.W.3d at 437. All words used and omitted are presumed used
and omitted purposefully. See Gutierrez, 237 S.W.3d at 873. 

 The plain language of Section 150.002(a), stated generally, requires a plaintiff,
"in any action for damages arising out of the provision of professional services by a
design professional," to file a certificate of merit--the affidavit of a competent,
licensed architect or professional engineer--contemporaneously with the filing of its
petition. (9)


 Subsection (b) provides an exception to the timing requirement in subsection
(a). Pursuant to subsection (b), if the statute of limitations will expire 10 or fewer
days from the filing of the petition and if, "because of such time constraints, the
plaintiff has alleged that an affidavit . . . could not be prepared," the plaintiff "shall
have" 30 days after the filing of the complaint to supplement its petition with an
affidavit. Further, the trial court may, on a motion and after a hearing, for good
cause, extend such time as it deems that justice requires. (10)

 A plaintiff's failure to file the affidavit in accordance with Subsection (a) or (b)
must result in dismissal of the complaint against the defendant. (11) 

 Ashkar contends that GCMC failed to comply with subsection (a) or (b) and
that, pursuant to subsection (d), the trial court was required, on Ashkar's motion, to
dismiss the suit. (12) GCMC contends that it complied with subsection (b) when it filed
a certificate of merit with its third amended petition on July 23, 2009.

 The record shows that GCMC first sued Ashkar on June 17, 2009. It is
undisputed that GCMC did not file a certificate of merit contemporaneously with its
petition, as required under subsection (a). In addition, our review of the record shows
that GCMC did not at anytime raise the statute of limitations or "allege[] that an
affidavit of a third-party architect or professional engineer could not be prepared"
because of such time constraints. Hence, GCMC did not invoke the 30-day extension
in subsection (b). 

 Even if we conclude that it invoked the extension, the record shows that
GCMC did not file a certificate of merit within 30 days. Rather, GCMC appended
a certificate of merit to its third amended petition 36 days later, on July 23, 2009. 
Nothing in Section 150.002 allows a plaintiff to cure a failure to timely comply. See
Landreth v. Las Brisas Council of Co-Owners, Inc., 285 S.W.3d 492, 500 (Tex.
App.--Corpus Christi 2009, no pet.) (refusing to consider attempts to cure defective
certificate of merit). 

 Further, although subsection (b) provides that "the trial court may, on motion,
after hearing and for good cause, extend such time as it shall determine justice
requires," the record does not reflect that GCMC moved the trial court to grant such
an extension or that a hearing in the matter was conducted. (13) 


 We conclude that GCMC failed to timely file a certificate of merit, as required
by Section 150.002(a) or (b). Section 150.002(d) mandates that, when, as here, a
plaintiff has failed to timely comply, the trial court is required, on the motion of the
defendant, to dismiss the suit. Here, Ashkar moved to dismiss GCMC's entire suit.
However, the trial court denied the motion. 

 On appeal, Ashkar contends that the trial court erred by failing or refusing to
dismiss all of GCMC's claims. GCMC sued Ashkar for negligence, breach of
contract, and breach of implied warranty. GCMC contends that, at most, only its
negligence claim is subject to dismissal based on Section 150.002. Ashkar responds
that GCMC's breach of contract and breach of warranty claims constitute improper
re-characterizations of its negligence claim to avoid the statute.

 We now determine which claims are affected by GCMC's failure to timely
comply with Section 150.002.

 Section 150.002(a) states that it applies "in any action for damages arising out
of the provision of professional services by a design professional." This language
suggests that the intent of Section 150.002 is that it apply broadly and that it is not
restricted to any specific cause of action. Other language in subsection (a) provides,
however, that, in the affidavit, the expert is required to have "set forth specifically at
least one negligent act, error, or omission claimed to exist and the factual basis for
such claim." (Emphasis added.) This language suggests that Section 150.002 is
intended only to apply to negligence claims. 

 This court has not previously addressed the scope of Section 150.002(a). The 
limited number of cases construing the version of Section 150.002 applicable to this
case have held that it only applies to negligence claims. Although we are not bound
by the decisions of our sister courts, an examination of the reasoning in those
opinions is instructive. 

 In Gomez v. STFG, Inc., the court concluded that "non-negligence causes of
action [do] not require a certificate of merit." No. 04-07-00223-CV, 2007 WL
2846419, at *3 (Tex. App.--San Antonio Oct. 3, 2007, no pet.) (mem. op). There,
the plaintiffs sued an architect for, inter alia, negligence and breach of contract. Id.
at *1. As here, the architect moved to dismiss the entire suit because the plaintiff
failed to file a certificate of merit. See id. The trial court dismissed the negligence
claim, but allowed the remainder of the claims to proceed, and the architect appealed. 
Id. 

 On appeal, the court noted that Section 150.002 was amended in 2005 to
"expand its application" from actions "alleging professional negligence" (14) to "any
action or arbitration proceeding arising out of the provision of professional
services." (15) Id. at *2. The court reasoned, however, that a certificate of merit was not
required solely because a complaint had a causal connection or relation to the
rendition of professional services. Id. Rather, the court looked to the definition of
the practice of professional engineering in the Texas Occupations Code and
considered it against the theories alleged in the petition. Id. at *2-3. 

 Without discussing the substance of the claim, however, the court decided that
a breach of contract theory simply does not implicate a professional engineer's
education, training, and experience in applying special knowledge or judgment. Id.
at *3. In affirming the trial court's decision, the court concluded that the breach of
contract claim, like the other non-negligence claims, did not require a certificate of
merit. Id. at *3-4.


 In Kniestedt v. Southwest Sound and Electronics, Inc., the court concluded that,
"[w]hen the plaintiff does not claim a negligent act, error, or omission exists, and is
not required to make such an allegation as an element of its cause of action, a
certificate is not required. . . ." 281 S.W.3d 452, 455 (Tex. App.--San Antonio 2007,
no pet.) (emphasis added). 

 In Consolidated Reinforcement, L.P. v. Carothers Executive Homes, Ltd., the
court, applying Gomez, concluded that "non-negligence" causes of action do not
require a certificate of merit. 271 S.W.3d 887, 892-93 (Tex. App.--Austin 2008, no
pet.). There, the plaintiff homebuilder, Carothers, sued an engineering firm,
Consolidated, alleging, inter alia, negligence, breach of contract, and breach of
warranty "arising out of Consolidated's design and construction of certain duplex[]
foundations." Id. at 889-90. Consolidated moved to dismiss the suit, contending
that Carothers had failed to timely file a certificate of merit, as required by Section
150.002(a). Id. at 890. Carothers responded by filing an amended petition, in which
it dropped its negligence claim and proceeded on its other claims. Id. Carothers
continued to assert through its non-negligence claims, however, that it had engaged
Consolidated to design and construct, and to supervise the construction of, the duplex
foundations and that those foundations "experienced numerous problems, including
significant cracking." Id. The trial court denied the motion to dismiss. Id. 

 On appeal, Consolidated contended that the trial court erred in that Carothers
was required to file a certificate of merit, based on "the undisputed fact that it
provided engineering and design services related to the duplexes and that the
remaining [claims] implicate[d] those engineering and design services." Id. at
890-91. Consolidated directed the court to the 2005 amendment to Section
150.002(a), discussed in Gomez, and argued that it showed the legislature's intent to
broaden the scope of the statute's application beyond negligence claims to those
claims generally arising from services such as those provided by Consolidated. Id.
at 892. The court disagreed on the basis that Consolidated's construction was
inconsistent with other language in Section 150.002(a) stating that the "affidavit shall
set forth specifically at least one negligent act, error, or omission." Id. The court,
applying Gomez and without apparently looking into the substance of the claims,
concluded that the "non-negligence" causes of action did not require a certificate of
merit. Id. at 893-94.

 Notably, however, the court looked to the petition and considered the substance
of Carothers's claim of negligent misrepresentation. Id. at 894-95. Carothers alleged
that Consolidated's employees had failed to exercise reasonable care or competence
concerning the information they gave to Carothers concerning the design and
construction of the duplex foundations. Id. at 894 n.7. The court concluded that it
was "not clear, however, that [Carothers's] negligent misrepresentation claim [arose]
out of the provision of professional services." Id. at 895.

 In Landreth v. Las Brisas Council of Co-Owners, Inc., the court, also following
Gomez, stated that "the plain wording of" Section 150.002(a) indicates that it applies
to any claim for professional services, but that the plaintiff must also "claim[] a
negligent act, error, or omission." 285 S.W.3d 492, 500 (Tex. App.--Corpus Christi
2009, no pet.). The court reasoned that, because it exempts suits involving fees, the
statute is not intended to apply to all suits. Id. The court seemed to construe Gomez
as having concluded that a claim labeled "breach of contract," on its face and without
more, globally, "should not be included." Id. The court refused to consider whether
the breach of contract claim before it came within the purview of the statute and
overruled the issue on the basis that the trial court had not determined whether the
plaintiff's breach of contract claim constituted a "claim for professional services." 
Id. 

 In the most recent case on the subject, Parker County Veterinary Clinic, Inc.
v. GSBS Batenhorst, Inc., the Fort Worth court of appeals took a different approach. 
No. 2-08-380-CV, 2009 WL 3938051, at *1 (Tex. App.--Fort Worth Nov. 19, 2009,
no pet.). There, the owner contracted with an architect to design a new building and
an engineer's services were incorporated into the owner's contract with the architect. 
Id. The engineer's plan called for waste disposal at the clinic to be via a septic
system, and the contract specifically provided that the architect's design services
would include research and application of local and state codes and city ordinances. 
Id. The owner secured financing based on the engineer's plans. Id. Subsequently,
however, the owner learned that a permit could not be issued for a septic system at
the location because it would violate certain state regulations. Id. The property
owner was forced to secure an additional $250,000 in financing to extend the city's
wastewater line and complete the project. Id.

 The owner sued the architect for breach of contract. Id. There, as here, the
architect sought to dismiss the suit on the basis that the owner failed to file a
certificate of merit. See id. The trial court granted dismissal, and the owner appealed. 
Id.

 On appeal, the court examined the history of Section 150.002 and explained as
follows:

 Even though the bill analysis on the amendment provides that the statute
was amended to clarify, among other things, that the section applies
when "the suit is for damages arising out of the providing of any
professional services, except a suit or cause of action for the payment of
fees for professional services, rather than only suits alleging professional
negligence, the statute after amendment, by its plain language,
nevertheless continues to require the expert affiant to set forth "at least
one negligent act, error, or omission claimed to exist and the factual
basis for each claim." To require such an affidavit outside the context
of a negligence cause of action would require an affidavit that had no
relevance to the suit and would render the statute meaningless.


Id. at *3 (citing Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H. B.1573,
79th Leg., R.S. (2005), available at http://www.legis.state.tx.us/tlodocs/79R/analysis

/html/HB01573S.htm.). The court held that Section 150.002 "does not apply in a suit
other than one for negligence arising out of the provision of professional services." 
Id.

 There, as here, however, the parties disagreed over the characterization of the
owner's cause of action as one for breach of contract. Id. In its analysis, the court
recognized, "Because we are not bound by the labels used by the parties, we look to
[the owner's] pleadings and determine for ourselves what claim" the owner asserted. 
Id. (citing Murphy v. Gruber, 241 S.W.3d 689, 697 (Tex. App.--Dallas 2007, pet.
denied), and Kimleco Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921, 924
(Tex. App.--Fort Worth 2002, pet. denied) (disregarding theory pled by plaintiff and
looking at crux of complaint to determine whether plaintiff asserted claim for
professional malpractice)). 

 To distinguish between tort and contract claims, the court considered the
source of the duty owed and the nature of the remedy sought. Id. (citing Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 45 (Tex.
1998), and Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494-95 (Tex. 1991)). 
When the plaintiff's cause of action arises only from a violation of a duty imposed by
law, the cause of action sounds in tort. Id. When the plaintiff's cause of action arises
from a duty imposed by a contract, the cause of action is for breach of contract. Id. 
The court pointed out, however, that a contractual relationship between the parties
may create duties under both contract and tort law, and "[t]he acts of a party may
breach duties in tort or contract alone or simultaneously in both." Id. (quoting
DeLanney, 809 S.W.2d at 495).

 Further, the nature of the remedy is instructive on the issue. Id. at *4. "When
the only loss or damage is to the subject matter of the contract, the plaintiff's action
is ordinarily on the contract." Id. (quoting DeLanney, 809 S.W.2d at 494-95, and
citing Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986) ("When the
injury is only the economic loss to the subject of a contract, itself the action sounds
in contract alone.")).

 In Parker County, the court examined the practice of architecture as defined
by the Occupations Code and noted that it includes identifying the legal constraints
of a project. Id. The court then examined the substance of the owner's complaint,
which was that the architect had failed to research and incorporate applicable laws, 
and concluded that the "complaint implicate[d] the quality of the professional services
provided by" the architect. Id.; compare Gomez, 2007 WL 2846419, at *3 (stating
that breach of contract claim "does not implicate" design professional's education,
training, and experience in applying special knowledge or judgment). 

 Next, the court examined the contract before it and determined that it "also
gave rise to a duty on" the architect to research and incorporate applicable laws. Id. 
The substance of the owner's breach of contract claim was that the architect had
breached its duty under a specific provision of the contract. Id. The court noted that
the damages sought were for economic loss directly related to the subject matter of
the contract--having to secure additional financing to remedy the architect's error
and complete the project. Id. The court concluded that the owner's claim was one
for breach of contract, which did not require a certificate of merit. Id. at *4-5.

 Here, like Parker County, we are not bound by the breach of contract and
breach of warranty labels used by GCMC. See id. at *3; see also Duerr v. Brown,
262 S.W.3d 63, 70 (Tex. App.--Houston [14th Dist.] 2008, no pet.) (stating that
whether allegations labeled as other causes of action "are actually claims for
professional negligence or something else is a question of law to be determined by
the court"); Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.--Houston
[1st Dist.] 1998, pet. denied) (determining nature of claims alleged based on
substance). Rather, we look to the pleadings to determine the nature of the claims
asserted. 

 In its petition, as amended, GCMC sued Ashkar for negligence, breach of
contract, and breach of implied warranty. Specifically, with regard to its negligence
claim, GCMC alleged that Ashkar owed a duty "to design, supervise, and test the
construction of the . . . expansion joint as a reasonable professional engineer engaged
in the construction business." GCMC alleged, 

 Ashkar breached that duty by unreasonably providing a design of the
expansion joint not capable of function for its intended purpose;
unreasonably performing lax oversight of Miner-Dederick's
construction; unreasonably conducting less than thorough testing of the
expansion joint, which would have revealed improper installation of the
expansion joint; and unreasonably failing to repair damage proximately
caused by Ashkar's defective engineering, construction supervision and
testing . . . ."


 Regarding its breach of contract claim, GCMC alleged that 

 Ashkar breached the contract by failing to deliver the project in
accordance with the terms and conditions its contract with
GCMC--specifically that the expansion joint would not allow the
release of potentially hazardous substances into the environment. 
Additionally, Ashkar breached the agreement by failing to adequately
monitor the work of Miner-Dederick's installation of the expansion
joint. Finally, Ashkar breached the agreement by failing to ensure that
Miner-Dederick fulfilled its obligations under the warranty. . . . Failure
of Ashkar to properly supervise Miner-Dederick or properly test the
expansion joint . . . resulted in the release of potentially hazardous
substances from the expansion joint."


 Regarding its breach of implied warranty claim, GCMC alleged that


 At all times material to this action, Ashkar held itself out as having
knowledge and skill design [sic] and manufacture of industrial and
chemical storage buildings, including the design, engineering,
installation, and supervision of the construction of the expansion
joint. . . . Ashkar knew or should have known that GCMC relied on
Ashkar's skill and judgment to design, engineer, and oversee
construction of the expansion joint. . . . Ashkar impliedly warranted the
expansion joint and related products and all services supplied by Ashkar
would be fit for the intended purpose. . . . The expansion joint was
defective and unfit to comply with the implied warranty of fitness . . . .
As a direct and proximate result, the expansion joint failed to function
. . . .(Emphasis added.) 

 The emphasized language indicates that GCMC's breach of contract and breach
of implied warranty claims mirror its negligence claim. Through each of its claims,
GCMC contends that Ashkar failed to adequately design, engineer, test, and oversee
the construction of the expansion joint. 

 Section 1001.003 of the Texas Occupations Code, titled "Practice of
Engineering," provides as follows, in pertinent part:

 (b) In this chapter, "practice of engineering" means the performance
of or an offer or attempt to perform any public or private service
or creative work, the adequate performance of which requires
engineering education, training, and experience in applying
special knowledge or judgment of the mathematical, physical, or
engineering sciences to that service or creative work.

 (c) The practice of engineering includes:

 (1) consultation, investigation, evaluation, analysis, planning,
engineering for program management, . . . engineering for
testing or evaluating materials for construction or other
engineering use . . . ; 

 (2) design . . . ;

 . . . . 

 (7) engineering for construction, alteration, or repair of real
property;

 . . . . 

 (9) engineering for review of the construction or installation of
engineered works to monitor compliance with drawings or
specifications;

 (10) a service, design, analysis, or other work performed for a
public or private entity in connection with a utility,
structure, building, machine, equipment, process, system,
work, project, or industrial or consumer product or
equipment of a mechanical, electrical, electronic, chemical,
hydraulic, pneumatic, geotechnical, or thermal nature;

 . . . . 

 (12) any other professional service necessary for the planning,
progress, or completion of an engineering service.


Tex. Occ. Code Ann. § 1001.003 (Vernon Supp. 2009). Hence, at the heart of the
services that an engineer provides is consultation, investigation, evaluation, analysis,
design, planning, testing, and any other professional service necessary for the
planning, progress, or completion of an engineering service, the adequate
performance of which requires engineering education, training, and experience in
applying special knowledge or judgment. See id.; see also Diversicare Gen. Partner,
Inc. v. Rubio, 185 S.W.3d 842, 849-51 (Tex. 2005) (considering essence of services
at issue). 


 Here, like Parker County, because the practice of engineering is defined as
including design, testing and evaluating materials for construction or other
engineering use, and any other professional service necessary for the planning,
progress, or completion of an engineering service, which GCMC contends that
Ashkar failed to adequately do, GCMC's claims implicate the quality of the
professional services provided by Ashkar. See Parker County, 2009 WL 3938051,
at *4; see also Kimleco Petroleum, 91 S.W.3d at 924 ("Regardless of the theory a
plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did
not provide adequate legal representation, the claim is one for legal malpractice.").

 Unlike Parker County, the parties before us do not have a written contract. 
GCMC does not direct us to any specific provision of a contract giving rise to any
specific duties by Ashkar to adequately design, engineer, test, or oversee the
construction of the expansion joint. Further, GCMC generally seeks damages for
repairs and remediation, and not economic loss related directly to the subject of the
contract, as in Parker County. This suggests that GCMC's claims do not sound in
contract. The essence of GCMC's claims are that it was injured by Ashkar's lapses
in professional judgment. A breach of that duty gives rise to a tort action. 

 We conclude that the substance of GCMC's claims constitute negligence
claims because the acts or omissions complained of amount to a claimed departure
from accepted standards of the practice of engineering. As such, all of GCMC's
claims, without regard to their titles, are subject to the requirements of Chapter 150. 

 Because, as we concluded above, GCMC failed to timely comply with Section
150.002, the trial court was required, on Ashkar's motion, to dismiss the suit. We
hold that the trial court erred by denying Ashkar's motion to dismiss GCMC's claims. 

Conclusion


 We reverse the order of the trial court and remand for entry of judgment
dismissing GCMC's claims. 

 



 Laura Carter Higley

 Justice



Panel consists of Chief Justice Radack and Justices Alcala and Higley.
1. The current version of Section 150.002 applies to a cause of action filed or
commenced on or after September 1, 2009, the effective date of the amendments. See
Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370,
amended by Act of May 29, 2009, 81st Leg., R.S., ch. 789, §§ 3-4, 2009 Tex. Gen.
Laws 1991, 1992. Here, GCMC's action was filed against Ashkar on June 17, 2008.
Accordingly, we apply the former version of section 150.002 in this case. 
2. Not a party to this appeal.
3. See Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369,
370 (amended 2009) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 150.002(a)-(b) (Vernon Supp. 2009)).
4. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(f) (Vernon
Supp. 2009)).
5. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a)-(b)
(Vernon Supp. 2009)).
6. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(c) (Vernon
Supp. 2009)).
7. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(d) (Vernon
Supp. 2009)).
8. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e) (Vernon
Supp. 2009)).
9. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a)-(b)
(Vernon Supp. 2009)).
10. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(c) (Vernon
Supp. 2009)).
11. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e) (Vernon
Supp. 2009)).
12. See id.
13. See id. (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(c) (Vernon
Supp. 2009)). 
14. The prior version of Section 150.002(a) stated as follows: 


 In any action for damages alleging professional negligence by a design professional,
the plaintiff shall be required to file with the complaint an affidavit of a third-party
registered architect or licensed professional engineer competent to testify and
practicing in the same area of practice as the defendant, which affidavit shall set forth
specifically at least one negligent act, error, or omission claimed to exist and the
factual basis for each such claim. . . .


 Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847,
896-97.
15. See Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369,
370.